

NUMBER 13-14-00607-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

GLORIA HICKS,                                                                          Appellant,

v.

GROUP & PENSION
ADMINISTRATORS, INC.,                                                          Appellee.

On appeal from the 94th District Court
of Nueces County, Texas.

NUMBER 13-14-00608-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**GULF COAST DIVISION, INC.**
**AND BAY AREA HEALTHCARE**
**GROUP, LTD.,**                                                   **Appellants,**

**v.**

**GROUP & PENSION**
**ADMINISTRATORS, INC.,**                                         **Appellee.**

## On appeal from the 94th District Court
## of Nueces County, Texas.

# OPINION

### Before Chief Justice Valdez, and Justices Rodriguez, and Garza
### Memorandum Opinion by Justice Garza

In these consolidated interlocutory appeals,[1] appellants Gloria Hicks ("Hicks"), Bay Area Healthcare Group, Ltd. ("BAHG"), and Gulf Coast Division, Inc. ("GCD") appeal the trial court's orders denying their motions to dismiss ("the Motions") that were filed pursuant to the Texas Citizens' Participation Act ("TCPA" or "the Act"), set forth in chapter 27 of the civil practice and remedies code.[2] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003 (West, Westlaw through Ch. 46, 2015 R.S.); *id.* § 51.014(a)(12) (West, Westlaw through Ch. 46, 2015 R.S.) (providing for the interlocutory appeal of an order denying a

---

[1] In appellate cause number 13-14-607-CV, the appellant is Gloria Hicks. In appellate cause number 13-14-608-CV, the appellants are Bay Area Healthcare Group, Ltd. ("BAHG") and Gulf Coast Division, Inc. ("GCD"). BAHG owns and operates Corpus Christi Medical Center, a hospital system. GCD is an affiliate of HCA, Inc., a Nashville-based owner and operator of hospitals. We refer to BAHG and GCD collectively as "the Hospital Defendants." Pursuant to GPA's unopposed motion to consolidate the appeals, we have consolidated the appeals.

[2] The TCPA is also known as the Anti-SLAPP statute. *See In re Estate of Check*, 438 S.W.3d 829, 830 (Tex. App.—San Antonio 2014, no pet.). "SLAPP" is an acronym for "Strategic Lawsuit Against Public Participation." *Id.* at 830 n.1.

motion to dismiss filed under section 27.003). The Motions were filed in response to a lawsuit filed by appellee, Group and Pension Administrators, Inc. ("GPA"), against the appellants. Hicks and the Hospital Defendants contend that the trial court erred in denying their Motions.

In appellate cause number 13-14-607-CV, we affirm that part of the trial court's order denying Hicks's Motion to dismiss GPA's claims of business disparagement and tortious interference with prospective relations against her. We reverse that part of the trial court's order denying Hicks's Motion to dismiss GPA's claims of conspiracy and joint enterprise and coercion of a public servant against her and render judgment dismissing those claims against Hicks. In appellate cause number 13-14-608-CV, we reverse the trial court's order denying the Hospital Defendants' Motion to dismiss GPA's claims against them and render judgment dismissing those claims. We remand both causes for further proceedings consistent with this opinion, including consideration by the trial court of an award under section 27.009 of the TCPA of costs and fees relating to the Motions to dismiss. *See id.* § 27.009 (West, Westlaw through Ch. 46, 2015 R.S.).

## I. BACKGROUND

In October 2012, GPA was one of four finalists to be awarded a contract to serve as the third-party administrator of Corpus Christi Independent School District's ("CCISD") self-funded health insurance plan. GPA asserts that on Friday, October 26, 2012, Xavier Gonzalez, an assistant superintendent of CCISD, advised GPA representatives that GPA would be awarded the third-party administrator contract on Monday, October 29, 2012.

Hicks, a Corpus Christi resident active in the community, is a member of the board

3

of trustees for Corpus Christi Medical Center ("CCMC").[3] Hicks learned of CCISD's decision to award the contract to GPA on Friday, October 26, 2012. That afternoon, Hicks sent the following email to six school board members and the superintendent of CCISD:

> I am on the Board of Directors for Corpus Christi Medical Center, which includes Bay Area Hospital, Doctors Regional, ER in Portland, ER in Calallen. The message that I would like to convey is that our hospitals have worked with GPA in the past and they are very difficult with all Healthcare providers. If CCISD does elect to go with GPA[,] we will be forced to bill CCISD employees. The billing difficulties are so bad we are unable to file claims and get them paid. It is a bad situation that I wanted to make you aware of. Thank you.[4]

Late in the afternoon on Friday, October 26, assistant superintendent Gonzalez notified a GPA representative that CCISD had decided to award the contract to a different bidder. On Monday, October 29, the school board met as scheduled and awarded the contract to a different bidder.

On March 4, 2013, GPA sued Hicks asserting claims for defamation/libel, defamation/libel per se, business disparagement, and tortious interference with a prospective business relationship. Hicks was served with the lawsuit on March 18, 2013.

On April 3, 2014, GPA filed an amended petition adding the Hospital Defendants, removing the defamation/libel claims, retaining the business disparagement and tortious interference claims, and adding claims for conspiracy, joint enterprise, and coercion of a public servant. *See* TEX. PENAL CODE ANN. § 36.03(a)(1) (West, Westlaw through Ch. 46, 2015 R.S.).

Hicks filed her Motion pursuant to section 27.003(b) of the civil practice and

---

[3] CCMC is the d/b/a for BAHG.

[4] On Saturday afternoon, October 27, Hicks sent essentially the same email to four CCISD school board members (three of whom had received the Friday email) and to the administrative assistant to the superintendent.

remedies code on June 2, 2014. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(b). Hicks argued that her Motion was timely because it was filed within sixty days of the date she was served with GPA's amended petition. *See id.* (providing that a motion to dismiss must be filed within sixty days "after the date of service of the legal action"). On August 19, 2014, GPA filed a response to the Motion in which it argued, among other things, that Hicks's Motion must be denied because she failed to file her Motion within sixty days of the date she was served with GPA's original petition. Hicks filed a reply to GPA's response.

On June 16, 2014, the Hospital Defendants filed their Motion pursuant to section 27.003(b). The Hospital Defendants noted that the Motion was timely as it was filed within sixty days of April 16, 2014, the date of service of GPA's amended petition. *See id.* The Hospital Defendants argued that the basis for GPA's claims against them—Hicks's emails—are communications that are protected under the TCPA. The Hospital Defendants also argued that GPA cannot establish "by clear and specific evidence a prima facie case for each essential element" of its claims. *See id.* § 27.005(c) (West, Westlaw through Ch. 46, 2015 R.S.) (providing that a court must dismiss claims if, after a defendant shows that claims relate to the defendant's rights to free speech, petition, or association, a plaintiff cannot establish a prima facie case for each element of claim). GPA filed a response to the Hospital Defendants' Motion, arguing that: (1) its claims are not covered by the TCPA under the "commercial speech" exception, *see id.* § 27.010(b); (2) Hicks's emails are not covered by the TCPA "because they amount to criminal coercion"; (3) the Hospital Defendants failed to meet their burden to show that Hicks's emails are covered by the TCPA; and (4) GPA made a prima facie showing as to each

5

essential element of its claims. The Hospital Defendants filed a reply in support of their Motion.

On August 28, 2014, the trial court held a hearing on both Hicks's and the Hospital Defendants' Motions. At the hearing, the Hospital Defendants preserved their right to request damages pursuant to section 27.009(1) of the TCPA. *See id.* § 27.009(1) (providing that if a court orders dismissal, it shall award court costs and attorneys' fees to moving party). On September 23, 2014, by separate orders, the trial court denied both Motions without stating the basis for its rulings. This interlocutory consolidated appeal followed.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

The TCPA provides a mechanism for early dismissal of suits based on a party's exercise of the right of free speech, the right to petition, or the right of association. *See id.* § 27.003. Section 27.003 allows a litigant to seek dismissal of a "legal action" that is "based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association." *Id.* § 27.003(a). A "'legal action' means a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief." *Id.* § 27.001(6) (West, Westlaw through Ch. 46, 2015 R.S.). "The statute broadly defines 'the exercise of the right of free speech' as 'a communication made in connection with a matter of public concern.'" *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3) (West, Westlaw through Ch. 46, 2015 R.S.)). "Under this definition, the right of free speech has two components: (1) the exercise must be made in a communication and (2) the communication must be made in connection with a

6

matter of public concern."  *Id.*  "[T]he statute defines 'communication' as 'the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic.'"  *Id.*  (citing TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(1) (West, Westlaw through Ch. 46, 2015 R.S.)).  Thus, the statute defines "communication" to include any form or medium—regardless of whether the communication takes a public or private form.  *Id.*  A "matter of public concern" is defined by the statute to include issues related to health or safety, community well-being, and the provision of services in the marketplace, among other things.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(7) (West, Westlaw through Ch. 46, 2015 R.S.).

The Act imposes the initial burden on the movant to establish by a preponderance of the evidence "that the legal action is based on, relates to, or is in response to the party's exercise" of the right of free speech, the right to petition, or the right of association.  *Id.* § 27.005(b).  The Act then shifts the burden to the nonmovant, allowing the nonmovant to avoid dismissal only by "establish[ing] by clear and specific evidence a prima facie case for each essential element of the claim in question."  *Id.* § 27.005(c).  The requirement that a plaintiff present "clear and specific evidence" of "each essential element" means that "a plaintiff must provide enough detail to show the factual basis for its claim."  *In re Lipsky*, 460 S.W.3d 579, 591 (Tex. 2015) (orig. proceeding).  "Though the TCPA initially demands more information about the underlying claim, the Act does not impose an elevated evidentiary standard or categorically reject circumstantial evidence."  *Id.*  When determining whether to dismiss the legal action, the court must consider "the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based."  TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a).  The court may allow specified

7

and limited discovery relevant to the motion on a showing of good cause, but otherwise all discovery in the legal action is suspended until the court has ruled on the motion to dismiss. *Id.* §§ 27.003, .006(b).

Under section 27.006 of the TCPA, the trial court may consider pleadings as evidence. *Id.* § 27.006(a). The TCPA does not require a movant to present testimony or other evidence to satisfy the movant's evidentiary burden. *Serafine v. Blunt*, __S.W.3d__, No. 03-12-00726-CV, 2015 WL 3941219, at *4 (Tex. App.—Austin June 26, 2015, no pet. h.).

> We review de novo questions of statutory construction. We consider de novo the legal question of whether the movant has established by a preponderance of the evidence that the challenged legal action is covered under the Act. We also review de novo a trial court's determination of whether a nonmovant has presented clear and specific evidence establishing a prima facie case for each essential element of the challenged claims.

*Id.* at *2 (internal citations omitted).

### III. DISCUSSION

### A. Hicks's Motion to Dismiss

#### 1. Jurisdiction

As an initial matter, we must address whether we have jurisdiction over Hicks's interlocutory appeal. In its brief, GPA argues that this Court lacks jurisdiction over Hicks's appeal because "[t]he TCPA does not grant the right of interlocutory appeal from the denial of a *motion for leave* to file a motion to dismiss." (Emphasis added.) In support of its argument, GPA cites *Summersett v. Jaiyeola*, 438 S.W.3d 84, 91 (Tex. App.—Corpus Christi 2013, pet. denied). In *Summersett*, the defendant filed a motion for leave to file a motion to dismiss outside the sixty-day window from the return of service, arguing that

8

service was improper. *Id.* at 88. Following a hearing, the trial court stated, "[t]he only order I'm entering today is that the Motion for Leave is denied." *Id.* at 91. This Court found that we lacked jurisdiction over the appeal because "[a] trial court's denial of a motion for leave or a motion for extension of time to file a motion to dismiss is neither a ruling on the merits of the motion to dismiss, nor a denial 'by operation of law' of a motion to dismiss." *Id.* at 91–92.

We find GPA's reliance on *Summersett* is misplaced. Here, Hicks filed a motion to dismiss; she did not file a motion for leave to file her motion to dismiss. Similarly, the trial court's order denying her motion to dismiss explicitly stated that "Defendant's motion to dismiss is hereby DENIED." GPA argues that after Hicks filed her motion to dismiss and GPA filed a response, Hicks filed a "reply" in support of her motion, in which she argued, alternatively, that the trial court should consider her motion to dismiss because the court can extend the time to file a motion on a showing of good cause. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(b) (West, Westlaw through Ch. 46, 2015 R.S.). GPA argues that by doing so, Hicks "directly asked the trial court to grant her leave[.]" According to GPA, "[t]he trial court could have denied the motion because it decided not to grant leave for Hicks to file an untimely motion." We are unpersuaded by GPA's argument. As noted, the Motion requested dismissal, not leave to file, and the order denying the Motion explicitly denied the motion to dismiss. The civil practice and remedies code expressly provides for interlocutory appeal of a trial court's order denying a motion to dismiss filed under the TCPA. *See id.* § 51.014(a)(12). We conclude that we have jurisdiction over this appeal and proceed to consider the remaining appellate issues.

**2. Trial Court's Denial of Hicks's Motion**

By a single issue, Hicks contends that the trial court erred in denying her Motion to dismiss because: (1) she established that GPA's claims arose out of her exercise of free speech and right to petition the government; and (2) GPA failed to establish by "clear and specific evidence" a prima facie case for each element of its claims. By sub-issues, she further argues: (1) ) her Motion was timely filed because it was filed within sixty days after the date of service of GPA's amended petition; and (2) GPA's claims are not exempt from application of the TCPA either by the "commercial speech" exemption or because the speech constitutes criminal coercion of a public servant.

**a. Timeliness of Hicks's Motion**

We begin with Hicks's sub-issue by which she contends that her Motion to dismiss was timely filed because it was filed within sixty days after service of GPA's amended petition. The statute requires that a motion to dismiss must be filed within sixty days of the "legal action." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(b). "Legal action" is defined as "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief." *Id.* § 27.001(6). Hicks argues that GPA's amended petition "reformulat[ed] the entire litigation" because it added the Hospital Defendants and asserted new claims against her for conspiracy with the Hospital Defendants and for tortious interference on the basis of "coercion of a public servant." Hicks also argues that she "could not have filed her motion to dismiss within sixty days after service of GPA's Original Petition without the risk of waiving her venue challenges."

We are unpersuaded that Hicks's arguments prevail as to all of GPA's claims. GPA's amended petition added new claims against Hicks for conspiracy and joint

10

enterprise and coercion of a public servant. However, the business disparagement and tortious interference claims asserted in GPA's amended petition—claims based on Hicks's emails—were also made in its original petition. Thus, Hicks was on notice that GPA was asserting business disparagement and tortious interference claims against her in March 2013—over a year before she filed her Motion in June 2014.

In support of her argument that her Motion was timely filed, Hicks cites *Better Bus. Bureau of Metro. Dallas, Inc.* ("BBB") *v. Ward.* 401 S.W.3d 440, 443 (Tex. App.—Dallas 2013, pet. denied). In *Ward*, a law firm sued the BBB based on the BBB's business rating of "F" assigned to the firm. *Id.* at 442. The suit was filed before the effective date of the TCPA. Months later, after the effective date of the TCPA, Ward joined as a party plaintiff in an amended petition. *Id.* at 443. The BBB filed a motion to dismiss Ward's individual claims against the BBB—the claims added after the effective date of the TCPA—but did not seek dismissal of the law firm's claims against the BBB. *Id.* The trial court denied the BBB's motion to dismiss. *Id.* The Dallas Court of Appeals found that "[t]he definition of 'legal action' in the statute is broad and evidences a legislative intent to treat any claim by any party on an individual and separate basis." *Id.* (citing TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(6)). The court found that the TCPA applied to the BBB's business review and that the trial court erred in denying the BBB's motion to dismiss under the TCPA. *Id.* at 445.

In *In re Estate of Check*, the San Antonio Court of Appeals rejected the categorical argument that Hicks makes here: that a motion to dismiss is timely filed if filed within sixty days of an amended petition. 438 S.W.3d 829, 836 (Tex. App.—San Antonio 2014, no pet.). The *Check* Court found that "such an interpretation would lead to absurd results

11

not intended by the Legislature." *Id.* The court noted that to permit the filing of any substantive pleading to

> reset the deadline for a motion to dismiss . . . is irrational and at odds with one of the purposes of the Act, which is to allow a defendant *early in the lawsuit* to dismiss claims that seek to inhibit a defendant's constitutional rights to petition, speak freely, associate freely, and participate in government as permitted by law.

*Id.* In *Check*, the movant asserted that his motion to dismiss was timely filed because it was filed within sixty days of service of the nonmovant's amended counterclaim. *Id.* The movant cited *Ward* in support of his argument that the amended counterclaim reset the sixty-day deadline. *Id.* at 837. The *Check* court, however, concluded that *Ward* "actually undermine[d]" the movant's position. The court noted that in *Ward*, the amended petition had asserted new claims; therefore, "because the plaintiff had added new claims, a new deadline was mandated." *Id.* The *Check* court explained, "[e]xtrapolating from *Ward*, in the absence of new parties or claims, the deadline for filing a motion to dismiss would run from the date of service of the original 'legal action.'" *Id.* The court then distinguished *Ward* on the ground that the *Check* nonmovant's amended counterclaim had *not* added new parties or claims. *See id.* Therefore, the court concluded that the movant's motion to dismiss was untimely. *Id.*

In *James v. Calkins,* the First Court of Appeals determined that the plaintiffs' claims asserted in an amended petition—filed after the effective date of the TCPA—were based on different factual allegations than those in the original petition. 446 S.W.3d 135, 146 (Tex. App.—Houston [1st Dist.] 2014, pet. filed). The *Calkins* court found that all of the causes of action in the amended petition "included substantively different factual

12

allegations" and were new causes of action; therefore, the TCPA applied to all of the claims. *Id.*

In *Miller Weisbrod, LLP v. Llamas-Soforo*, the El Paso Court of Appeals also rejected the position that Hicks urges us to adopt here: to define the term "legal action" broadly to include any subsequent pleading filed in a lawsuit. No. 08-12-00278-CV, 2014 WL 6679122, at *9 (Tex. App.—El Paso Nov. 25, 2014, no pet.) . In *Miller Weisbrod*, a law firm that was added as a defendant in a first amended petition argued that its motion to dismiss was timely filed because it was filed within sixty days of a second amended petition that added two individual defendants. *Id.* The El Paso Court disagreed, stating that, "[w]e see nothing in the statute or its history and purpose to indicate the Legislature intended to create a perpetual opportunity to file a motion to dismiss whenever a pleading qualifies as a 'legal action' under Section 27.001(6)." *Id.* at *10. The court noted that the law firm was named as a defendant and served with the first amended petition, which triggered the law firm's sixty-day deadline for filing a motion to dismiss under the TCPA. *Id.* at *11. Because the law firm did not file its motion within the sixty-day deadline, the El Paso Court found that it was not timely filed. *Id.*

In the present case, Hicks argues—as did the law firm in *Miller Weisbrod*—that her motion to dismiss was timely filed because it was filed within sixty days of GPA's amended petition. We agree with the *Ward* court's statement that "[t]he definition of 'legal action' in the statute is broad and evidences a legislative intent to treat any claim by any party on an individual and separate basis." *Ward*, 401 S.W.3d at 443. As noted, GPA's original petition asserted claims of business disparagement and tortious interference with prospective relations against Hicks, and those claims were retained in GPA's amended

13

petition.[5]  As to those two claims, therefore, Hicks's sixty-day deadline to file a motion to dismiss was triggered when she was served with GPA's original petition and her Motion, filed over a year later, was untimely filed as to those two claims.  *See In re Estate of Check*, 438 S.W.3d at 836; *Miller Weisbrod, LLP*, 2014 WL 6679122, at *11.  Accordingly, we overrule Hicks's timeliness sub-issue as it pertains to her Motion to dismiss GPA's business disparagement and tortious interference with prospective relations claims against her.

GPA's amended petition, however, asserted two new claims against Hicks: "conspiracy and joint enterprise" and criminal coercion of a public servant.  *See* TEX. PENAL CODE ANN. § 36.03(a)(1) (West, Westlaw through Ch. 46, 2015 R.S.).  Both claims are—like GPA's business disparagement and tortious interference claims—based on Hicks's emails.  In its "conspiracy and joint enterprise" claim, GPA asserts that Hicks and the Hospital Defendants "combined or collaborated their efforts to engage in the unlawful practices [of business disparagement and tortious interference with prospective relations]."  GPA asserts that "[a]ll of the defendants, or, alternatively, at least one of the defendants, committed an unlawful, overt act or acts to further the object or course of action. . . .  At least one defendants, [sic] though more likely all of the defendants respectively, committed a tort against GPA while acting within the scope of the enterprise."  Although no "tort" or "unlawful" act is specifically identified, the only conduct complained of is Hicks's emails.

GPA's "coercion of a public servant" claim is included in a section added to GPA's tortious interference with prospective relations claim.  Specifically, GPA alleged that:

---

[5] All of GPA's claims are factually based on Hicks's emails.

14

> Defendants coerced seven members of the CCISD Board of Trustees and the CCISD Superintendent with a threat to retaliate against CCISD through a campaign of direct billing CCISD teachers if CCISD contracted with GPA as CCISD intended to do. Using this threat as a means of coercion, Defendants influenced public servants, i.e. the CCISD Board of Trustees and the CCISD Superintendent, in the specific exercise of their official powers and the specific performance of their official duties.

Because these two claims against Hicks were first asserted in GPA's amended petition, we conclude that Hicks's Motion to dismiss was timely filed as to these two claims. *See In re Estate of Check*, 438 S.W.3d at 837; *Ward*, 401 S.W.3d at 445.

Accordingly, we sustain Hicks's timeliness sub-issue as it pertains to GPA's conspiracy and joint enterprise and coercion of a public servant claims against her. We therefore proceed to determine whether the trial court erred in denying Hicks's Motion as to those claims under the TCPA.

### b. Application of TCPA to GPA's Conspiracy and Coercion Claims

We next determine whether Hicks established by a preponderance of the evidence that the TCPA applies to her statements. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b). Section 27.003 provides that a party may file a motion to dismiss if a legal action "is based on, relates to, or is in response to [that] party's exercise of the right of free speech, right to petition, or right of association." *Id.* § 27.003(a). Section 27.001(3) defines "exercise of the right of free speech" as "a communication made in connection with a matter of public concern." *Id.* § 27.001(3). "Matter of public concern" is defined as including an issue related to "health or safety," "environmental, economic, or community well-being," and "a good, product, or service in the marketplace." *Id.* § 27.001(7)(A), (B), (E). "Exercise of the right to petition" is defined as including a communication pertaining to "a proceeding of the governing body of any political subdivision of this state." *Id.* §

15

27.001(4)(A)(vii). Section 27.005(b) provides that a court "shall dismiss a legal action against a moving party if the moving party shows by a preponderance of the evidence" that the action is based on, relates to, or is in response to the moving party's exercise of the right of free speech, right to petition, or right of association. *Id.* § 27.005(b).

The record shows that Hicks's emails related to whether, if CCISD selected GPA as its third-party administrator, insurance claims made by CCISD's teachers would be promptly and satisfactorily paid. Hicks's email expressed concern that GPA's past performance as being "difficult" with health care providers likely would result in CCISD's employees being billed for health care costs. We conclude that Hicks's emails related to the health and economic well-being of CCISD's employees and also related to a "service" offered by GPA in the marketplace. *See id.* § 27.001(7)(A), (B), (E). We conclude, based on the facts alleged in GPA's pleadings and in response to Hicks's Motion, that Hicks met her initial burden of showing by a preponderance of the evidence that her statements were made in connection with a matter of public concern and that GPA's conspiracy and coercion of a public servant claims relate to those statements so that the TCPA applies to those claims. *See id.* § 27.001(3), (7)(A), (B), (E), 27.005(b); *see In re Lipsky*, 460 S.W.3d at 586.

GPA contends that Hicks's emails do not relate to the exercise of her right to free speech or the right to petition because: (1) the TCPA applies only to public speech, and Hicks's emails were private speech; (2) Hicks's statements are exempt from the TCPA under the commercial speech exemption under section 27.010(b), *see* TEX. CIV. PRAC. & REM. CODE ANN. § 27.010(b); and (3) Hicks's emails constitute criminal coercion under the penal code and therefore fall outside the protection of the TCPA. *See* TEX. PENAL

16

CODE ANN. § 36.03(a)(1). After the parties filed briefs, the Texas Supreme Court rejected GPA's first argument in *Lippincott*, 462 S.W.3d at 509. The Court held that the statutory definition of "communication" includes both public and private communication. *See id.*

GPA also argues that the TCPA does not apply to Hicks's statements because the statements fall within the "commercial speech" exemption. Section 27.010(b) provides that:

> This chapter does not apply to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction in which the intended audience is an actual or potential buyer or customer.

TEX. CIV. PRAC. & REM. CODE ANN. § 27.010 (West, Westlaw through Ch. 46, 2015 R.S.). Section 27.010(b) thus provides, in relevant part, that a statement is exempt from the TCPA if the action is against a person primarily engaged in selling services and the statement arises from the sale of services. *See id.* This provision has been construed such that, for the exemption to apply, the statement must be made for the purpose of securing sales in the goods or services of the person making the statement. *See Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 88–89 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). The party asserting the exemption (here GPA) bears the burden of proving its applicability. *Id.* at 89.

GPA argues that Hicks's emails fall within the commercial speech exemption because she was a member of the Hospital Defendants' Board of Directors and the Hospital Defendants "primarily engage in the business of selling healthcare services." According to GPA, "Hicks, on behalf of the Hospital Defendants, endeavored to place her hospitals at an advantageous position to sell healthcare services at higher

17

reimbursements—that would be paid by CCISD's self-funded insurance plan." Hicks responds that as an unpaid member of the hospital's governing board, she "was not selling anything." Hicks notes that "[t]he only services at issue were third[-]party insurance companies' services, and only GPA was selling them." GPA continues to assert that Hicks and the Hospital Defendants had an economic interest in the CCISD board's decision to award the insurance contract to a different provider. Even assuming, without deciding, that GPA's assertion is correct—that Hicks and the Hospital Defendants stood to gain if the CCISD board chose a different provider—that does not alter the fact that Hicks was not "a person primarily engaged in the business of selling or leasing goods or services." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.010(b); *see also Schimmel v. McGregor*, 438 S.W.3d 847, 857–58 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (finding that a lawyer's statements that allegedly induced the City of Galveston to back out of an agreement to purchase properties was not commercial speech because his intended audience, the City, was not a "potential buyer or customer" of his services). We conclude that GPA has failed to establish the applicability of the "commercial speech" exemption. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.010(b); *Schimmel*, 438 S.W.3d at 857–58.

We next address GPA's argument that Hicks's emails do not constitute protected conduct under the TCPA because "they amount to criminal coercion." A person commits the offense of coercion of a public servant if he "influences or attempts to influence a public servant in a specific exercise of his official power or a specific performance of his official duty or influences or attempts to influence a public servant to violate the public servant's known legal duty[.]" TEX. PENAL CODE ANN. § 36.03(a)(1). The penal code

18

defines "coercion" as "a threat, however communicated" to take certain actions. *Id.* §
1.07(a)(9) (West, Westlaw through Ch. 46, 2015 R.S.). Thus, "coercion" must involve a
"threat." Because the penal code does not define "threat," we must give the term its
common ordinary meaning. *Jaster v. Comet II Const., Inc.*, 438 S.W.3d 556, 563–64
(Tex. 2014). "Threat" is defined, in relevant part, as "an expression of intention to inflict
evil, injury, or damage." *See* Merriam-Webster's Online Dictionary, <http://www.merriam-webster.com/dictionary/threat> (last visited July 2, 2015).

According to GPA, Hicks "threatened the school board members that if the CCISD
retained GPA to administer the CCISD's self-funded health insurance plan, then the
Hospital Defendants would refuse to work with the CCISD's self-funded health insurance
plan and would instead 'be forced to bill CCISD employees.'" We do not construe Hicks's
emails as expressing an intention to inflict evil, injury, or damage, and therefore, the
emails do not constitute a "threat." *See id.* Accordingly, Hicks's emails do not constitute
coercion of a public servant.

Because we have held that Hicks's emails—which formed the basis for GPA's
claims of coercion of a public servant and conspiracy and joint enterprise—constitute
protected conduct under the TCPA, we must next determine whether GPA met its burden
to establish, by clear and specific evidence, a prima facie case for every essential element
of its claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c).

Because we have already concluded that Hicks's emails do not constitute a
"threat," GPA cannot establish a prima facie case for coercion of a public servant. *See*
TEX. PENAL CODE ANN. §§ 1.07(a)(9), 36.03(a)(1). In other words, GPA has not met its

19

burden of establishing by clear and specific evidence a prima facie case for the "threat" element of this claim. *See id.*; TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c).

Civil conspiracy requires (1) two or more persons who agree upon an object, (2) a meeting of minds on the object to be accomplished, and (3) one or more overt, unlawful acts committed in furtherance of the conspiracy, (4) which results in damages. *Guevara v. Lackner*, 447 S.W.3d 566, 582 (Tex. App.—Corpus Christi 2014, no pet.). The elements of a joint enterprise are (1) an agreement (express or implied) among the members of the group, (2) a common purpose to be carried out by the group, (3) a community of pecuniary interest among the members in that common purpose, and (4) an equal right to direct and control the enterprise. *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 525, 530 (Tex. 2003). An appellate court first looks to the evidence of an agreement or agreements among the members of the group to ascertain their possible common purposes, and then it considers if the evidence supports a finding of a joint enterprise with respect to each possible common purpose. *Id.* at 531.

In its amended petition, in the section asserting a claim for "conspiracy and joint enterprise," GPA asserts that the defendants "collaborated their efforts to engage in the unlawful practices set forth above." As to GPA's "joint enterprise" theory, GPA's amended petition does not identify any "agreement" or parties to it, does not identify any "common purpose," and does not identify any "community of pecuniary interest" involved in the alleged joint enterprise. *See id.*

Our review of GPA's amended petition reveals that the only allegedly "unlawful practice" about which GPA complains as a basis for its conspiracy and joint enterprise claim is Hicks's emails. GPA has not provided evidence of—or even identified—any other

20

"unlawful practice."  We have already determined that Hicks met her initial burden of showing by a preponderance of the evidence that her statements were made in connection with a matter of public concern so that the TCPA applies to GPA's "conspiracy and joint enterprise" claim.  GPA offers no other evidence regarding the alleged unlawful nature of Hicks's act of sending the emails.  Therefore, we conclude that GPA has not established, by clear and specific evidence, a prima facie case on its claims for conspiracy or joint enterprise.  See TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c).

We therefore hold that because Hicks established by a preponderance of the evidence that GPA's conspiracy and joint enterprise and coercion of a public servant claims are based on, relate to, or are in response to her exercise of her right to free speech, and because GPA failed to establish a prima facie case on any essential element of its conspiracy and joint enterprise or coercion of a public servant claims, the trial court erroneously denied Hicks's Motion to dismiss those claims under the TCPA.  See TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b), (c).  We reverse that part of the trial court's order denying Hicks's Motion to dismiss GPA's conspiracy and joint enterprise and coercion of a public servant claims against Hicks and render judgment dismissing those claims against Hicks.

## B.  The Hospital Defendants' Motion to Dismiss

By a single issue, the Hospital Defendants contend on appeal that the trial court erred in denying their Motion.

In their Motion, the Hospital Defendants argued that:  (1) they can show by a preponderance of the evidence that all of GPA's claims against them are based on Hicks's emails, in which she was exercising her right of free speech and right to petition; and (2)

21

GPA cannot establish by clear and specific evidence a prima facie case for each essential element of its claims. *See id.* In its amended petition, GPA asserted against the Hospital Defendants the same claims it asserted against Hicks: business disparagement, tortious interference with prospective contract, and conspiracy and joint enterprise. All of GPA's claims are based on Hicks's emails.

In its response, GPA argued that: (1) its claims are not covered by the TCPA under the "commercial speech" exception, *see id.* § 27.010(b); (2) Hicks's emails are not covered by the TCPA "because they amount to criminal coercion"; (3) the Hospital Defendants failed to meet their burden to show that Hicks's emails are covered by the TCPA; and (4) GPA made a prima facie showing as to each essential element of its claims.

We have already determined that (1) Hicks's emails constitute protected conduct under the TCPA, (2) the emails do not fall within the "commercial speech" exemption, and (3) the emails do not constitute criminal coercion. For the reasons discussed above, we find that the Hospital Defendants have established by a preponderance of the evidence that all of GPA's claims are based on Hicks's exercise of her right to free speech. *See id.* § 27.005 (b). To defend against the Hospital Defendants' Motion, GPA's burden under the TCPA was to establish by clear and specific evidence a prima facie case for each essential element of its claims against the Hospital Defendants. *See id.* § 27.005(c).

1. **Business Disparagement**

"Business disparagement or 'injurious falsehood applies to derogatory publications about the plaintiff's economic or commercial interests.'" *In re Lipsky*, 460 S.W.3d at 591 (quoting 3 DAN B. DOBBS, PAUL T. HAYDEN & ELLEN M. BUBLICK, THE LAW OF TORTS § 656,

at 615 (2d ed. 2011)). "'To prevail on a business disparagement claim, a plaintiff must establish that (1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff.'" *Id.* at 592 (quoting *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003)). In their Motion, the Hospital Defendants asserted that GPA "cannot present by clear and specific evidence a prima facie case that [Hicks's] statements were false, committed with malice and without privilege, or caused [GPA] special damages—i.e., caused [GPA] to lose the bid from the School District."

In its response, GPA pointed to the following evidence in support of its claim: (1) Hicks's emails; (2) an unsworn "declaration" by Lynn Huckaby, branch director of GPA's San Antonio, Texas, office; and (3) an unsworn "declaration" by Jeff McPeters, a GPA senior sales executive.[6] Huckaby's declaration states, in relevant part, that: (1) on Friday, October 26, 2012, Huckaby and other GPA staff members met with Xavier Gonzalez, CCISD Assistant Superintendent; (2) on the afternoon of October 26, 2012, Gonzalez said that GPA had won the CCISD business; and (3) around 5:00 p.m. on October 26,[7] Gonzalez called and said "GPA did not end up getting the business after all, despite what he had said earlier." The McPeters declaration states, in relevant part:

> Because of the business disparagement and interference by Gloria Hicks and Corpus Christi Medical Center with GPA's prospective relations with the Corpus Christi Independent School District, GPA suffered direct pecuniary loss by losing the fees to service the subject contract in the approximate amount of $2,289,528, which includes $603,792 for fees for

---

[6] We note that neither declaration includes a jurat as specified in section 132.001(d) of the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 132.001(d) (West, Westlaw through Ch. 46, 2015 R.S.).

[7] We note the declaration states Gonzalez called at 5:00 p.m. "on Friday, October 29, 2012." We assume that "29" is a typographical error.

23

claims administration, $129,384 for utilization review, and approximately $30,000 for other servicing fees on a yearly basis.

In their reply to GPA's response, the Hospital Defendants objected to McPeters's declaration as conclusory "because it fails to provide underlying facts to support the conclusion these Defendants disparaged or interfered with GPA's prospective relations and it contains unsupported legal conclusions." Similarly, the Hospital Defendants objected to Huckaby's declaration as containing inadmissible hearsay, i.e., Gonzalez's statements to Huckaby.

Assuming, without deciding, that the declarations are adequate substitutes for an affidavit, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 132.001(a) (West, Westlaw through Ch. 46, 2015 R.S.), we agree that McPeters's declaration is conclusory. In *Lipsky*, the supreme court found "general averments of direct economic losses and lost profits" insufficient to satisfy the minimum requirements of the TCPA. *See In re Lipsky*, 460 S.W.3d at 593. The Court noted that "[o]pinions must be based on demonstrable facts and a reasoned basis." *Id.*

With regard to GPA's hearsay objection to Huckaby's declaration, we note that an objection that a declaration contains hearsay is an objection to the form of the declaration. *Stone v. Midland Multifamily Equity REIT*, 334 S.W.3d 371, 374 (Tex. App.—Dallas 2011, no pet.). A defect in the form of a declaration must be objected to in the trial court and failure to obtain a ruling from the trial court on an objection to the form of a declaration waives the objection. *Id.* Here, although the Hospital Defendants raised their hearsay objection to the trial court, the record does not reflect that the trial court ruled on the objection. Therefore, the Hospital Defendants waived their hearsay objection. *See id.* Nonetheless, even considering the hearsay, we conclude that the Huckaby declaration

24

provides no evidence of causation. The declaration simply states that, on the afternoon of October 26, Gonzalez said that GPA had won the CCISD business and then later that day, said that it had not. The declaration provides no clear and specific evidence that Hicks's emails caused CCISD to award the contract to another bidder.

Even if we consider GPA's pleadings, we find no evidence establishing that Hicks's emails caused CCISD to award the contract to another bidder. GPA alleged in its amended petition: "Mr. Gonzalez told Mr. McPeters that the Superintendent and some board members received an email that really stirred them up (i.e., the October 26 email), that the email was 'political,' and that due to the email, CCISD decided not to award the contract to GPA." However, as noted above, McPeters's declaration does not expressly state that Hicks's emails caused CCISD to award the contract to another bidder.

We conclude that GPA's supporting evidence does not establish, by clear and specific evidence, a prima facie case on the essential element of causation. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c).

### 2. Tortious Interference with Prospective Business Relations

To prevail on a claim for tortious interference with prospective business relations, a plaintiff must establish that (1) a reasonable probability existed that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result. *McGregor*, 438 S.W3d at 860 (citing *Coinmach Corp. v. Aspenwood Apartment Corp.*,

25

417 S.W.3d 909, 923 (Tex. 2013); *Wal–Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001)). In GPA's response to the Hospital Defendants' Motion, it asserts, in a section addressing its tortious interference claim, that "[d]efendants' interference caused CCISD to not award the contract to [GPA], as CCISD had intended and informed [GPA] it would." As evidence to support this claim, GPA cites Huckaby's declaration. As we have noted, however, Huckaby's declaration provides no such evidence of causation. We conclude that GPA's supporting evidence does not establish, by clear and specific evidence, a prima facie case on the essential element of causation in its claim for tortious interference with prospective business relations. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c); *McGregor*, 438 S.W.3d at 860–61 ("The fact that Schimmel's alleged conduct occurred roughly contemporaneously with the City of Galveston's and the Department of Public Safety's consideration of whether to move forward with the purchases does not establish that Schimmel's conduct *caused* the governmental agencies to act as they did.) (emphasis in original).

### 3. Conspiracy and Joint Enterprise and Coercion of a Public Servant

As noted earlier, the sending of Hicks's emails is the only allegedly "unlawful practice" that the Hospital Defendants are accused of "conspiring" to engage in. We have already determined that Hicks met her burden of showing that her statements were made in connection with a matter of public concern so that the TCPA applies to GPA's conspiracy and joint enterprise claim. Because GPA's conspiracy and joint enterprise claims against the Hospital Defendants are based solely on Hicks's emails, and because we have found that GPA failed to establish a prima facie case on the essential element of causation on either of GPA's alleged underlying torts, we conclude that GPA has not

established, by clear and specific evidence, a prima facie case on its claims against the Hospital Defendants for conspiracy and joint enterprise. *See West Fork Advisors, LLC v. SunGard Consulting Services, LLC*, 437 S.W.3d 917, 920 (Tex. App.—Dallas 2014, pet. filed) ("Conspiracy is a derivative tort because 'a defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable.'").

We also have already determined that GPA did not establish coercion of a public servant by clear and specific evidence. Accordingly, GPA's claim of coercion of a public servant against the Hospital Defendants also fails.

We hold that the trial court erred in denying the Hospital Defendants' Motion to dismiss GPA's claims. We sustain the Hospital Defendants' sole issue.

## IV. CONCLUSION

In appellate cause number 13-14-607-CV, we affirm that part of the trial court's order denying Hicks's Motion to dismiss GPA's claims of business disparagement and tortious interference with prospective relations against her, and remand those claims to the trial court. We reverse that part of the trial court's order denying Hicks's Motion to dismiss GPA's claims of conspiracy and joint enterprise and coercion of a public servant against her, and render judgment dismissing those claims.

In appellate cause number 13-14-608-CV, we reverse the trial court's order denying the Hospital Defendants' Motion to dismiss GPA's claims against the Hospital Defendants and render judgment dismissing GPA's claims against the Hospital Defendants. We remand both causes for further proceedings consistent with this opinion, including consideration by the trial court of an award of costs and fees relating to the

motions to dismiss under section 27.009 of the TCPA. *See id.* § 27.009 (West, Westlaw through Ch. 46, 2015 R.S.).

DORI C. GARZA<br>
Justice

Delivered and filed the
3rd day of September, 2015.