

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-15-00045-CV

STEPHEN NOLAN BEDFORD AND
AUTUMN BEDFORD

APPELLANTS

V.

DARIN SPASSOFF AND 6 TOOL,
LLC, FORMERLY KNOWN AS
DALLAS DODGERS BASEBALL
CLUB, LLC, D/B/A DALLAS
DODGERS BASEBALL

APPELLEES

----------

### FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY
### TRIAL COURT NO. 096-275689-14

----------

## OPINION

----------

## I. INTRODUCTION

In five points, Appellants Stephen Nolan Bedford and Autumn Bedford appeal an interlocutory order denying their motion to dismiss under the Texas Citizens Participation Act (TCPA). *See* Tex. Civ. Prac. & Rem. Code Ann.

§§ 27.003, 51.014(a)(12) (West 2015).  We will affirm in part and reverse and remand in part.

## II. BACKGROUND

Appellee Darin Spassoff is the sole owner and president of Appellee 6 Tool, LLC, formerly known as Dallas Dodgers Baseball Club, LLC, d/b/a Dallas Dodgers Baseball, a youth instructional baseball organization.  The Bedfords' son was a member of the Dodgers.

At around 10:00 a.m. on September 12, 2014, Stephen sent Spassoff the following text message:  "My name is [Stephen] and I need to speak to [you] ASAP to give you a chance to make something right before I start hitting your social media sites."  Spassoff called Stephen, who explained that his wife had had an extramarital affair with Terry Cruz, the Dodgers' batting coach.[1]  Stephen was "extremely hostile and profane" during the conversation and demanded a refund of the $1,000 participation fee that had been paid for the Fall 2014 season.

Later in the afternoon that same day, Stephen sent Spassoff a number of other text messages, including one in which he questioned the ethics of the Dodgers organization and threatened to display a sign at their games.  Just before 6:00 p.m., Stephen forwarded to Spassoff a copy of a message that had

---

[1]Cruz and Stephen had been coworkers since March 2012, and Cruz had known Autumn since May 2012.  Cruz became a part-time coach for the Dodgers in September 2013.

2

just been posted on Facebook using Autumn's account. The post "reviewed" the Dodgers, gave the organization one out of five stars, and stated,

> Be very careful. One of the coaches put my son on the team an[d] then started calling and texting my wife. This coach is a home wrecker and the club stands behind him. I guess that's the kind of lessons they plan on teaching the kids. Very unethical and from talking to the executives they don't plan on changing. Please stay away!!!!!!!!!!!!!!!!!!

At around 6:30 p.m., Spassoff's attorney notified Stephen to stop communicating directly with Spassoff and that Appellees were conducting an investigation into Stephen's accusation involving Autumn and Cruz. Thereafter, Stephen sent Spassoff a message that contained a picture of two posters that he had prepared and that stated, "Dodgers coach put my son on a team and then had an affair with my wife!" At 6:56 p.m., Stephen sent Spassoff and his attorney an email that stated, among other things, "I can post any and every truth online, which I plan to do. . . . I wanted to leave the Dodger organization out of it completely[,] but it seems they have taken a different path." Spassoff cancelled the Dodgers' practice that was scheduled for the following day.

Appellees sued the Bedfords in November 2014. Specifically complaining about the September 12, 2014 Facebook posting regarding the Dodgers, Appellees asserted claims against both Stephen and Autumn for libel and business disparagement. Additionally, Spassoff asserted a claim against Stephen for intentional infliction of emotional distress (IIED), and the Dodgers asserted a claim against Stephen for tortious interference with an existing

3

contract or, alternatively, a claim against Autumn for breach of contract, averring that Stephen had removed his son from the Dodgers organization and had demanded to be reimbursed for the registration fee "through coercive threats and disparaging acts."

The Bedfords timely filed a motion to dismiss that expressly implicated chapter 27 of the civil practice and remedies code. They prayed that Appellees recover nothing, that Appellees be sanctioned, and that they recover reasonable attorneys' fees. The Bedfords also filed an affidavit authored by Stephen, to which Appellees objected. After a hearing at which both sides presented argument, the trial court signed an order sustaining Appellees' objections to Stephen's affidavit and later signed an order denying the Bedfords' motion to dismiss. The Bedfords appeal.

### III. JURISDICTION

Directing us to our opinion in *Jennings v. WallBuilder Presentations, Inc.*, Appellees question whether we have jurisdiction to consider an interlocutory appeal from a signed order denying dismissal. *See* 378 S.W.3d 519, 524–29 (Tex. App.—Fort Worth 2012, pet. denied) (construing civil practice and remedies code section 27.008 and holding that interlocutory appeal was limited to circumstances in which motion to dismiss is denied by operation of law). However, as the supreme court has observed, the legislature "has since clarified that an interlocutory appeal is permitted from any interlocutory order denying a motion to dismiss under the TCPA." *In re Lipsky*, 460 S.W.3d 579, 585 n.2 (Tex.

4

2015); *see* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(12). Appellees filed this lawsuit in November 2014, after the legislature amended section 51.014. *See* Act of May 24, 2013, 83rd Leg., R.S., ch. 1042, § 4, 2013 Tex. Sess. Law Serv. 2501, 2502 (West) (codified at Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(12)). Thus, there is no jurisdictional impediment to this appeal.

## IV. THE TCPA

The TCPA protects citizens from retaliatory lawsuits that seek to intimidate or silence them on matters of public concern. *Lipsky*, 460 S.W.3d at 586. Its purpose is to identify and summarily dispose of lawsuits designed only to chill First Amendment rights, not to dismiss meritorious lawsuits. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.002 (West 2015).

Under the TCPA's two-step dismissal process, the initial burden is on the defendant-movant to show by a preponderance of the evidence that the plaintiff's claim "is based on, relates to, or is in response to the [movant's] exercise of," among other things, the right of free speech. *Id.* § 27.005(b) (West 2015). If the movant satisfies this burden, the second step shifts the burden to the plaintiff to establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c).

We review de novo a trial court's ruling on a motion to dismiss under the TCPA. *United Food & Commercial Workers Int'l Union v. Wal-Mart Stores, Inc.*, 430 S.W.3d 508, 511 (Tex. App.—Fort Worth 2014, no pet.). We consider the pleadings and supporting and opposing affidavits stating the facts on which the

5

liability or defense is based. Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a) (West 2015).

## V. THE BEDFORDS' INITIAL BURDEN

In their first point, the Bedfords argue that they met their initial burden under the TCPA's expedited dismissal procedure to show by a preponderance of the evidence that all of Appellees' claims are based on, relate to, or were filed in response to their exercise of the right of free speech.

Under the TCPA, the "[e]xercise of the right of free speech" means "a communication made in connection with a matter of public concern," which includes an issue related to "a good, product, or service in the marketplace." *Id.* § 27.001(3), (7)(E) (West 2015).

The Bedfords filed their motion to dismiss pursuant to chapter 27, stating that they were sued "for expressing an opinion on the internet and 'threatening to protest.'" Appellees' libel and business disparagement claims are premised upon the Facebook posting, which stated that a coach began contacting Autumn after the Bedfords' son had joined the Dodgers, that the coach is a "home wrecker," that the Dodgers "stand[] behind him," that this is the kind of "lesson[]" that the Dodgers planned to teach the team members, and that it was very unethical. Spassoff's IIED claim and the Dodgers' tortious interference claim, which broadly averred that Stephen was liable under those theories on account of the "threats and disparaging" assertions or acts that he directed at Appellees, can only concern the Facebook posting and the texts or emails that Stephen sent to

6

Spassoff on September 12, 2014. The Dodgers' alternative claim against Autumn for breach of contract, which hinges upon allegations that she removed her child from the Dodgers organization and demanded a reimbursement of the non-refundable registration fee, plainly relates to the Facebook posting and texts or emails.

The record thus demonstrates that Appellees' claims are premised upon communications that were made in connection with a matter of public concern— i.e., an issue related to the Dodgers' provision of youth baseball coaching services in the marketplace. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001(3), (7)(E), 27.011(b) (West 2015) (mandating liberal construction of TCPA); *see also Hicks v. Grp. & Pension Adm'rs, Inc.*, 473 S.W.3d 518, 528 (Tex. App.—Corpus Christi 2015, no pet.) (holding individual's email sent to six school board members stating problems she had experienced with Group & Pension Administrators, Inc. when school board was considering awarding contract to GPA constituted matter of public concern and that trial court erred by denying motion to dismiss); *Kinney v. BCG Attorney Search, Inc.*, No. 03-12-00579-CV, 2014 WL 1432012, at *5 (Tex. App.—Austin Apr. 11, 2014, pet. denied) (mem. op.) (holding individual's post to website stating negative opinions of BCG and other companies owned by BCG's owner constituted matter of public concern because post related to a service in the marketplace). We hold that the Bedfords met their initial burden under the TCPA, and we sustain their first point.

7

## VI. OBJECTIONS

The Bedfords argue in their second point that the trial court erred by sustaining Appellees' objections to Stephen's affidavit. We have determined that the Bedfords met their initial burden under the TCPA, and they do not argue that the contents of the affidavit are necessary to establish any element of a defense to the Appellees' claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(d). Therefore, any error in sustaining Appellees' objections was harmless. *See* Tex. R. App. P. 44.1(a). We overrule the Bedfords' second point.

## VII. APPELLEES' BURDEN

In their third point, the Bedfords argue that Appellees failed to establish by clear and specific evidence a prima facie case for each essential element of their claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c).

"[C]lear and specific evidence," as used in the TCPA, requires a plaintiff to "provide enough detail to show the factual basis for its claim." *Lipsky*, 460 S.W.3d at 590–91. "In a defamation case that implicates the TCPA, pleadings and evidence that establishes the facts of when, where, and what was said, the defamatory nature of the statements, and how they damaged the plaintiff should be sufficient to resist a TCPA motion to dismiss." *Id.* at 591.

Appellees argued in their response to the Bedfords' motion to dismiss that they established by clear and specific evidence a prima facie case for each essential element of their libel claim. Appellees did not, however, assert any argument or analysis in an effort to meet their burden as to their business

8

disparagement, IIED, tortious interference, and breach of contract claims. Appellees therefore failed to meet their burden under the TCPA as to those claims, and the trial court erred by denying the Bedfords' motion to dismiss those claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c).

As for Appellees' libel claim, libel is defamation expressed in written or other graphic form. *Id.* § 73.001 (West 2011). A libel plaintiff must prove (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages, in some cases. *Lipsky*, 460 S.W.3d at 593. A statement is defamatory if the words tend to injure the plaintiff's reputation, exposing it to hatred, contempt, ridicule, or financial injury, or if it tends to impeach the person's honesty, integrity, or virtue. Tex. Civ. Prac. & Rem. Code Ann. § 73.001. To qualify as defamatory, a statement should be derogatory, degrading, somewhat shocking, and contain elements of disgrace. *Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 356 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). But a communication that is merely unflattering, abusive, annoying, irksome or embarrassing, or that only hurts the plaintiff's feelings, is not actionable. *Id.* The court construes the statement as a whole in light of surrounding circumstances based upon how a person of ordinary intelligence would perceive the entire statement. *Musser v. Smith Protective Servs., Inc.*, 723 S.W.2d 653, 655 (Tex. 1987).

Moreover, to be actionable, a statement must assert an objectively verifiable fact rather than an opinion. *Bentley v. Bunton*, 94 S.W.3d 561, 580–81 (Tex. 2002). "We classify a statement as fact or opinion based on the statement's verifiability and the entire context in which the statement was made." *Am. Heritage Capital, LP v. Gonzalez*, 436 S.W.3d 865, 875 (Tex. App.—Dallas 2014, no pet.). According to one court, a statement is an opinion if it is "by its nature, an indefinite or ambiguous individual judgment that rests solely in the eye of the beholder" or is "a loose and figurative term employed as metaphor or hyperbole." *Palestine Herald-Press Co. v. Zimmer*, 257 S.W.3d 504, 511 (Tex. App.—Tyler 2008, pet. denied). Whether a statement is a statement of fact or opinion is a question of law. *Am. Heritage Capital, LP*, 436 S.W.3d at 875.

When the Bedfords' Facebook posting is construed as a whole and in light of the surrounding circumstances, instead of individually and in isolation, as the dissent's analysis proceeds, the gist of the posting is that the Dodgers and Spassoff condone adultery and plan to teach the same to its players. This is not a simple, unflattering statement of opinion. It is a degrading comment, it challenges Appellees' integrity, it has the potential to inflict financial injury upon the Dodgers, and it is verifiably false. Indeed, the Dodgers are a youth instructional baseball organization. In exchange for a fee, team members receive instruction about baseball and have the opportunity to participate in the game. No part of the services provided by the Dodgers has anything to do with

10

condoning adultery. As Spassoff affirmed in his affidavit, neither he nor the Dodgers condone or approve of adultery between players' parents and coaches.

Private plaintiffs, like Appellees, must prove that the defendant was at least negligent. *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 82, 85 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). Spassoff testified in his affidavit that Stephen barraged him with numerous text messages or emails and made the Facebook posting before he had an opportunity to gather information and conduct an internal inquiry into Stephen's accusations. *See id.* ("Texas courts have defined negligence in the defamation context as the 'failure to investigate the truth or falsity of a statement before publication, and [the] failure to act as a reasonably prudent [person].'").

Finally, when an offending publication qualifies as defamation per se, a plaintiff may recover general damages without proof of any specific loss. *Lipsky*, 460 S.W.3d at 596. This is because defamation per se refers to statements that are so obviously harmful that general damages, such as mental anguish and loss of reputation, are presumed. *Id.* Defamation is actionable per se if it injures a person in his office, business, profession, or occupation. *Morrill v. Cisek*, 226 S.W.3d 545, 549 (Tex. App.—Houston [1st Dist.] 2006, no pet.). As explained, the Facebook posting has the potential to inflict financial injury upon the Dodgers' business. Thus, as defamation per se, damages to the Dodgers' reputation are presumed, although the presumption alone will support only an award of nominal damages. *See Lipsky*, 460 S.W.3d at 596.

11

The dissent contends that the Facebook posting is incapable of constituting defamation per se because no part of it "accuses Mr. Spassoff or the Dallas Dodgers Baseball Club of lacking a peculiar or unique skill related to baseball or to running a baseball organization." *See Hancock v. Variyam*, 400 S.W.3d 59, 67 (Tex. 2013). This is an overly narrow interpretation of Appellees' business. There can be no doubt that participating in competitive youth sports additionally helps instill confidence, hone social skills, and—particularly relevant here—build character. By accusing Appellees of condoning adultery, a morally unacceptable activity, Stephen has indirectly accused Appellees of lacking a peculiar or unique skill that is necessary for the proper conduct of the Dodgers' business—the moral judgment necessary to appropriately lead a group of youths in furtherance of an extracurricular activity. *See id.* Indeed, Stephen impliedly stressed this very point in the Facebook posting when he wrote, "I guess that's the kind of lessons they plan on teaching the kids. Very unethical . . . . Please stay away!!!!!!!!!!!!!!!!!!"

We hold that Appellees met their burden to establish by clear and specific evidence a prima facie case for each essential element of their libel claim. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). Accordingly, the trial court erred by denying the Bedfords' motion to dismiss Appellees' business disparagement, IIED, tortious interference, and breach of contract claims, but it did not err by denying the Bedfords' motion to dismiss Appellees' libel claim. We therefore sustain in part and overrule in part the Bedfords' third point.

12

## VIII. CLAIMS AGAINST AUTUMN

The Bedfords argue in their fourth and fifth points that the trial court should have granted the motion to dismiss as to Autumn because the only allegation relating to her is that her Facebook page was used by Stephen. This complaint was not raised in the Bedfords' motion to dismiss. *See* Tex. R. App. P. 33.1(a); Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a) (providing that trial court considers pleadings and affidavits when ruling). Further, Appellees asserted a libel claim against both Stephen and Autumn. We have determined that Appellees met their burden under civil practice and remedies code section 27.005(c) as to that claim. Therefore, at this point, dismissal of Appellees' libel claim on its merits is no more appropriate as to Autumn than it is for Stephen. The only issue before the trial court was whether Appellees' claims should survive a TCPA challenge, not how they should be resolved on their merits if they survived. We overrule the Bedfords' fourth and fifth points.

## IX. CONCLUSION

We reverse the trial court's order denying the Bedfords' motion to dismiss as to Appellees' business disparagement, IIED, tortious interference, and breach of contract claims; affirm the order denying the motion to dismiss as to Appellees' libel claim; and remand this cause to the trial court for further proceedings

13

consistent with this opinion and in accordance with the TCPA.  *See* Tex. Civ.

Prac. & Rem. Code Ann. § 27.009 (West 2015).[2]


/s/ Bill Meier
BILL MEIER
JUSTICE

PANEL:  DAUPHINOT, WALKER, and MEIER, JJ.

DAUPHINOT, J., concurs without opinion.

WALKER, J., filed a dissenting opinion.

DELIVERED:  February 11, 2016

---

[2]The Bedfords argue in their sixth point that we should sanction Appellees in the amount of $20,000 and remand the cause to the trial court to consider an award of attorneys' fees in their favor.  The trial court will consider section 27.009 upon remand.  We overrule the Bedfords' sixth point.