

# NUMBER 13-21-00298-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**HEAVENLY HOMES OF SOUTH TEXAS, LLC
AND MICHAEL J. MCCARTHY,** Appellants,

**v.**

**INFINITY CUSTOM CONSTRUCTION, LLC,** Appellee.

## On appeal from the County Court at Law No. 6
## of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Tijerina
Memorandum Opinion by Chief Justice Contreras**

In this appeal, appellants Heavenly Homes of South Texas, LLC (HHST) and

Michael J. McCarthy contest the trial court's denial of their motion to dismiss a suit brought

by appellee Infinity Custom Construction, LLC (Infinity). By a single issue, appellants

argue the suit should have been dismissed under the Texas Citizens Participation Act

(TCPA). We affirm in part and reverse and remand in part.

## I. BACKGROUND

McCarthy worked for Infinity, a residential construction firm, between 2017 and 2018. Alleging that Infinity failed to pay him more than $96,000 in earned commissions, McCarthy filed a wage claim with the Texas Workforce Commission (TWC) in 2019. *See* TEX. LAB. CODE ANN. § 51.051.[1]

Infinity filed the instant suit against McCarthy and HHST on March 9, 2021, alleging that McCarthy "knowingly filed a false complaint with the [TWC]" and "publish[ed] false and misleading information to current and prospective clients of [Infinity]." More specifically, Infinity alleged that McCarthy forged the signature of Infinity representative Eddie Garza on a "commission payout schedule" which he submitted with his wage claim. Further, Infinity alleged that McCarthy sent text messages to "prospective and/or current clients of [Infinity]" which contained "lies associated with [Infinity's] business practices" in an attempt to "disparage [Infinity]'s business reputation" and to steal Infinity's clients. The petition alleged causes of action of tortious interference with contract, tortious interference with prospective business relations, business disparagement, and defamation. McCarthy and HHST answered the suit and raised various affirmative defenses.

In an amended petition filed on June 24, 2021, Infinity added an allegation that McCarthy "went out of his way to solicit individuals to knowingly leave false and misleading review[s] on Facebook." The amended petition added a cause of action for common law fraud; further, it alleged that HHST was McCarthy's alter ego and that the two defendants constituted a joint enterprise for purposes of liability. It also included the

---

[1] The record does not reflect the outcome of the wage claim proceedings.

2

following exhibits, among others: (1) copies of messages allegedly sent by McCarthy to Infinity customers[2]; (2) a copy of a completed wage claim form allegedly filed by McCarthy with the TWC[3]; and (3) a police report reflecting that Garza reported that Infinity was the victim of forgery.

On June 30, 2021, appellants filed an "Anti-SLAPP Motion to Dismiss" under the TCPA, arguing that Infinity's suit implicates their rights to freedom of speech and to petition and that Infinity cannot produce clear and specific evidence to support a prima facie case or to rebut their affirmative defenses. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b). The motion requested dismissal of the suit as well as attorney's fees and sanctions. Infinity filed a response in which it argued that the TCPA does not apply to its suit because McCarthy's allegedly actionable statements constitute "commercial speech." *See id.* § 27.010(a)(2). Infinity also alleged that, even if the TCPA applied, dismissal would be improper because it produced clear and specific evidence of a prima facie case and because appellants failed to establish any of their affirmative defenses. Infinity attached to its response an unsworn declaration by Garza, who stated in relevant part:

---

[2] One of the messages stated:

[Infinity is] the worst company you can build with! I worked with them for 2 1/2 years and they cut corners big time! Plus they will hit with so many change orders at the end you'll end up paying over $80 a square foot.

If you're still designing the home it's not too late to back out.

I can show you change order for $13K at the end of construction on top of what they already paid for. They don't include spray foam insulation standard, they don't build with Hebel unless it's an upgrade, they build 9' wall plate instead of 10' I can go on and on about how they cut corners and charge more but give you less.

I can give 5-10 customers['] cell phone numbers and you can ask if they had a good experience building their home with Infinity and I'll give you my customers['] numbers and you'll see the difference.

[3] The form stated in part: "I will provide a commission pay out schedule of what was owed." However, the "pay out schedule," which Infinity alleges contains a forged signature, does not appear in the record.

4.   I am familiar with the facts and circumstances surrounding Michael McCarthy's statements made basis of this lawsuit to both current and prospective clients of [Infinity].

5.   McCarthy was previously employed with [Infinity] for roughly two (2) years prior to his termination. McCarthy's role was done as an independent contractor and included facilitating sales for [Infinity] and increasing production via getting prospective homebuyers under contract.

6.   McCarthy was privy to information as to how [Infinity] worked that individuals outside of [Infinity] would not know, including cost per square foot, specific building practices, and contract negotiations in general.

7.   The statements made by McCarthy associated with [Infinity]'s business practices in the residential construction industry are not true. McCarthy knew that at least one of the individuals he was contacting was a current or prospective client of making false representations associated with [Infinity] [sic].

8.   On at least one occasion, McCarthy and [HHST] took a client from [Infinity], Mr. Murad Moqbel being one of those clients. I personally exchanged the text messages with Mr. Moqbel, and the same is attached to Plaintiff's Response to Defendants Anti-SLAPP Motion to Dismiss as Exhibit A.[4] [Infinity] would have profited between $40,000 and $50,000 had Mr. Murad Moqbel not been convinced to build with HHST over [Infinity]. [Infinity] lost profits as a result of McCarthy's interference with Mr. Moqbel.

9.   On at least one occasion, current and/or prospective clients of [Infinity] approached me concerned about the statements McCarthy made regarding [Infinity]'s business practices, and requested to meet with me regarding whether they would be willing to remain under contract, or proceed with going under contract for the build of a residence. On at least one occasion, I personally had to meet with said clients to reassure them that the building project would be handled as McCarthy represented, that the information McCarthy

---

[4] The text message from Moqbel to Garza states:

Hi Eddie, I hope all is well with you. Please see the positive review I posted about you last year which has already more than 1000 views. Anyways, last year Mike McCarthy, your ex-employee, convinced me to go with him as he said he would charge me 67 dollars per square feet [sic] including Hebel board and foam insulation. However, later on he started to appear not as transparent as he initially appeared. My wife and I also decided to postpone the building idea and not go with him. Now, we are ready to build and I would like to check with you if you are interested in building for us the same blueprint from last year. If so, please let me know how much you will charge per square feet [sic]. Thanks a lot!

provided was taken out of context, and the statements were wholly false.

10. [Infinity] representatives demanded that McCarthy and HHST retract their statements made that are associated with [Infinity] from the medium they were posted more than 90 days prior to [Infinity] filing this lawsuit.

11. The average profit [Infinity] makes for completed/closed construction projects is between $40,000 and $50,000, depending on the floor plan, upgrades selected by the buyer, and market costs.

12. The signature used to support McCarthy's claim for wages to the [TWC Labor Law Section] signed on the document described as an employment agreement was not signed by myself, and the signature is not an authentic representation of my signature.

Appellants filed a reply to Infinity's response in which they objected to Garza's unsworn declaration on grounds that: (1) it did not contain Garza's date of birth or address, as is generally required for unsworn declarations, *see id.* § 132.001(d); (2) it was not based on Garza's personal knowledge; and (3) it was conclusory. The record contains no ruling on the objections.

After a hearing on July 29, 2021, appellants' motion was denied by operation of law.[5] *See id.* §§ 27.005(a), 27.008(a). Appellants filed their notice of accelerated appeal on September 16, 2021. *See id.* § 51.014(a)(12). Later that day, the trial court signed a written order finding that the motion to dismiss "was frivolous or solely intended to delay" and denying the motion, but awarding zero attorney's fees and court costs to appellees. *See id.* § 27.009(b); TEX. R. APP. P. 27.3 ("After an order or judgment in a civil case has been appealed, if the trial court modifies the order or judgment, or if the trial court vacates the order or judgment and replaces it with another appealable order or judgment, the

---

[5] At the hearing, the trial court heard live testimony from Garza and Mario Pena, a co-owner of Infinity, over the objection of appellants' counsel. For the reasons discussed herein, we do not consider the testimony in our analysis.

5

appellate court must treat the appeal as from the subsequent order or judgment . . . .").
Appellants then filed an amended notice of appeal.

## II.    DISCUSSION

### A.    Applicable Law and Standard of Review

The TCPA is intended to "protect[] citizens from retaliatory lawsuits that seek to intimidate or silence them on matters of public concern." *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015) (orig. proceeding). The statute was first enacted in 2011 but has been repeatedly and substantially amended in recent years. Our review in this case is hampered by appellants' failure to consistently cite or apply the correct version of the law.

Under the applicable version of the statute,[6] a party seeking dismissal has the initial burden to show that the "legal action is based on or is in response to . . . the party's exercise of: (A) the right of free speech; (B) the right to petition; or (C) the right of association." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b)(1). If the defendant meets its initial burden, then the plaintiff must establish by "clear and specific evidence a prima facie case for each essential element of the claim in question" to avoid dismissal. *Id.* § 27.005(c). Even if the plaintiff makes this showing, the trial court must nevertheless dismiss the action if the defendant "establishes an affirmative defense or other grounds on which the [defendant] is entitled to judgment as a matter of law." *Id.* § 27.005(d).

Dismissal under the TCPA is determined on a claim-by-claim basis. *Union Pac. R.R. Co. v. Dorsey*, __ S.W.3d __, __, No. 14-20-00308-CV, 2022 WL 1789813, at *2 (Tex. App.—Houston [14th Dist.] June 2, 2022, no pet. h.) (op. on reh'g). Our review of a

---

[6] The current version of the TCPA applies to all suits, such as this one, filed on or after September 1, 2019. *See* Act of May 20, 2019, 86th Leg., R.S., ch. 378, §§ 11, 12, 2019 Tex. Gen. Laws 684.

6

ruling on a TCPA motion to dismiss is de novo. *Entravision Commc'ns Corp. v. Salinas*, 487 S.W.3d 276, 281 (Tex. App.—Corpus Christi–Edinburg 2016, pet. denied); *Hicks v. Grp. & Pension Adm'rs, Inc.*, 473 S.W.3d 518, 526 (Tex. App.—Corpus Christi–Edinburg 2015, no pet.), *abrogated on other grounds by Montelongo v. Abrea*, 622 S.W.3d 290 (Tex. 2021).

## B. TCPA Applicability

We first address whether the TCPA applies to this suit. According to our review of the live pleadings, Infinity's various causes of action are based on three distinct factual allegations: (1) McCarthy "knowingly filed a false complaint with the [TWC]" in connection with his wage claim; (2) McCarthy sent text messages to "prospective and/or current clients of [Infinity]" which contained "lies associated with [Infinity's] business practices"; and (3) McCarthy "solicit[ed] individuals" to "leave false and misleading review[s] on Facebook."

Infinity does not dispute that its claims are "based on" or "in response to" McCarthy's exercise of a protected constitutional right. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3) (defining "exercise of the right of free speech" as "a communication made in connection with a matter of public concern"); *id.* § 27.001(7) (defining "matter of public concern")[7]; *id.* § 27.001(4)(A)(iii) (defining "exercise of the right to petition" as

---

[7] A "matter of public concern" is defined as:

a statement or activity regarding:

(A)     a public official, public figure, or other person who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity;

(B)     a matter of political, social, or other interest to the community; or

(C)     a subject of concern to the public.

TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(7). In their trial court pleadings and on appeal, the parties cite an obsolete version of the TCPA which stated that a "matter of public concern" also "includes an issue

including "a communication in or pertaining to . . . an executive or other proceeding before a department of the state or federal government or a subdivision of the state or federal government"). Instead, it argues that its claims are exempt from the TCPA.

We address each factual allegation in turn.

### 1.     Common Law Fraud

First, Infinity alleged that McCarthy committed fraud by forging Garza's signature on a document which he submitted to TWC as part of his 2019 wage claim.[8] However, as Infinity notes on appeal, the applicable version of the TCPA includes an exemption, enacted in 2019, for "a legal action based on a common law fraud claim." *Id.* § 27.010(a)(12).[9] This exemption squarely applies to Infinity's claim regarding the allegedly forged document submitted to the TWC. Accordingly, the TCPA does not apply to this claim.

### 2.     Text Messages

Next, Infinity alleged that McCarthy "publish[ed] false and misleading information to current and prospective clients of [Infinity]" via text messages. Infinity argues that the claims based on this allegation fall under the TCPA's commercial speech exemption. We agree.

Under the commercial speech exemption, regardless of whether a claim "is based

---

related to . . . a good, product, or service in the marketplace." *See* Act of May 24, 2011, 82nd Leg., R.S., ch. 341, § 2, sec. 27.001(7)(E), 2011 Tex. Gen. Laws 960 (amended 2019).

[8] This allegation constituted the sole factual basis for Infinity's fraud cause of action; it did not support any of the other causes of action.

[9] In its response to the motion to dismiss, Infinity argued its fraud claim was exempt from the TCPA under the commercial speech exemption. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.010(a)(2). Here, the "intended audience" of the allegedly forged document was not "an actual or potential buyer or customer" of Infinity or McCarthy. Instead, the intended audience was the TWC. *See id.* The commercial speech exemption therefore does not preclude the applicability of the TCPA to this claim.

on or is in response to" the defendant's exercise of constitutional rights, the TCPA will generally not apply to

> a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction in which the intended audience is an actual or potential buyer or customer.

*Id.* § 27.010(a)(2). In *Castleman v. Internet Money Ltd.*, the Texas Supreme Court clarified that, regardless of which type of transaction the suit arises out of (the "sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction"), "the intended audience" of the statement or conduct "must be actual or potential customers of the defendant." 546 S.W.3d 684, 688 (Tex. 2018) ("[T]he commercial-speech exemption applies only to *certain* communications related to a good, product, or service in the marketplace—communications made not as a protected exercise of free speech by an individual, but as commercial speech which does no more than propose a commercial transaction." (internal quotations omitted)). The party asserting the commercial speech exemption bears the burden of proving its applicability by a preponderance of the evidence. *Hieber v. Percheron Holdings, LLC*, 591 S.W.3d 208, 211 (Tex. App.—Houston [14th Dist.] 2019, pet. denied); *Hicks*, 473 S.W.3d at 531.

When McCarthy sent the allegedly false text messages, he was primarily engaged in the business of selling residential construction services, and he made the statements in his capacity as such a seller. Moreover, the text messages arose out of a commercial transaction involving residential construction and were directed to individuals, such as Moqbel, who were actual or potential customers of McCarthy's business. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.010(a)(2); *Castleman*, 546 S.W.3d at 688. And, neither exception to the exemption applies. *See* TEX. CIV. PRAC. & REM. CODE ANN.

9

§ 27.010(b)(1), (2). Because the commercial speech exemption covers Infinity's claims regarding McCarthy's text messages, the TCPA does not apply to Infinity's claims insofar as they rely on these specific factual allegations.

### 3. Solicitation of Facebook Reviews

Finally, Infinity asserted in its amended petition that McCarthy "solicit[ed] individuals to knowingly leave false and misleading review[s] on Facebook." Specifically, it alleged:

> McCarthy went out of his way to solicit individuals to knowingly leave false and misleading review[s] on Facebook. Specifically, upon review of the Facebook posts allegedly made by Venessa Ocanas and Antonio Alcaina ("Facebook Posts"), one will see that these posts oddly contain the exact same language. This is not coincidence. For reference[:] McCarthy shares Antonio Alcaina's post containing false information regarding Infinity that Mr. Alcaina posted on or around July 28, 2020. Thereafter, McCarthy shares Venessa Ocanas' post containing false information regarding that [sic] Mr. Alcaina posted on or around July 28, 2020. Both of the aforementioned Facebook Posts initially posted by Venessa Ocanas and Antonio Alcaina—two separate individuals—and then subsequently shared by McCarthy are identical to one another. These posts indicate a coordinated effort to defame and disparage Infinity's business as a whole through language and actions not otherwise protected under the law.
>
> . . . .
>
> Although McCarthy did not post the applicable Facebook Posts himself, he did knowingly and falsely share information about Infinity that McCarthy cannot show is true. Specifically, when sharing Venessa Ocanas' Facebook post that it is "[s]uch a shame that [Infinity] is more interested in making money then [sic] building with quality." McCarthy knowingly and falsely asserted Infinity's business practices were such that Infinity habitually mistreated its clients when sharing Antonio Alcaina's Facebook [Post:] ". . . that's not a great way to take care of your clients."[10]

(Internal references omitted.) Infinity argues that the commercial speech exemption applies to these allegations.

---

[10] Copies of the Facebook posts were attached as exhibits to Infinity's petition.

As noted, there are exceptions to the commercial speech exemption. Under § 27.010(b)(2), enacted in 2019, the exemption does not apply to "a legal action against a person related to the communication, gathering, receiving, posting, or processing of consumer opinions or commentary, evaluations of consumer complaints, or reviews or ratings of businesses." *Id.* § 27.010(b)(2); *see* Act of May 20, 2019, 86th Leg., R.S., ch. 378, § 9, 2019 Tex. Gen. Laws 684. In its argument regarding the commercial speech exemption, Infinity does not address whether the § 27.010(b)(2) exception applies; instead, it cites caselaw predating its enactment. *See Castleman*, 546 S.W.3d at 690; *Grant v. Pivot Tech. Sols., Inc.*, 556 S.W.3d 865, 879 (Tex. App.—Austin 2018, pet. denied).

Infinity's claims related to McCarthy's alleged solicitation of negative Facebook reviews are plainly "related to" the "communication, gathering, receiving, posting, or processing" of "consumer opinions or commentary, evaluations of consumer complaints, or reviews or ratings" of Infinity's business. Therefore, the § 27.010(b)(2) exception is applicable, and the commercial speech exemption does not preclude application of the TCPA to Infinity's claims in this regard.

## C. Prima Facie Case

Because the TCPA is applicable to Infinity's claims regarding McCarthy's alleged solicitation of Facebook reviews, Infinity had the burden to produce clear and specific evidence of a prima facie case as to each essential element of those claims. *Id.* § 27.005(c).

A "prima facie case," as used in the TCPA, means "evidence that is legally sufficient to establish a claim as factually true if it is not countered." *S & S Emergency*

*Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018). It represents the "minimum quantity of evidence necessary to support a rational inference that the allegation of fact is true." *Schimmel v. McGregor*, 438 S.W.3d 847, 855 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). In the context of the TCPA, "clear" has been interpreted to mean "unambiguous," "sure," or "free from doubt," while "specific" has been interpreted to mean "explicit" or "relating to a particular named thing." *In re Lipsky*, 460 S.W.3d at 590. The standard requires "element-by-element, claim-by-claim exactitude." *Elite Auto Body LLC v. Autocraft Bodywerks, Inc.*, 520 S.W.3d 191, 206 (Tex. App.—Austin 2017, pet. dism'd). We review the evidence in the light most favorable to the plaintiff. *Schimmel*, 438 S.W.3d at 855–56.

### 1. Essential Elements

Infinity's allegation regarding McCarthy's solicitation of Facebook reviews supported its causes of action for tortious interference with contract, tortious interference with prospective business relations, defamation, and business disparagement.

To establish a claim for tortious interference with contract, a plaintiff must prove: (1) an existing contract subject to interference; (2) a willful and intentional act of interference with the contract; (3) that proximately caused the plaintiff's injury; and (4) caused actual damages or loss. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000).

The elements of a claim for tortious interference with prospective business relations are:

> (1) a reasonable probability that the parties would have entered into a
> contractual relationship; (2) an "independently tortious or unlawful" act by
> the defendant that prevented the relationship from occurring; (3) the
> defendant did such act with a conscious desire to prevent the relationship

12

from occurring or knew that the interference was certain or substantially certain to occur as a result of his conduct; and (4) the plaintiff suffered actual harm or damage as a result of the defendant's interference.

*Super Starr Int'l, LLC v. Fresh Tex Produce, LLC*, 531 S.W.3d 829, 846–47 (Tex. App.—Corpus Christi–Edinburg 2017, no pet.).

To establish a business disparagement claim, a plaintiff must establish: (1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff. *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003). Special damages are synonymous with economic damages and are distinguishable from general damages. *In re Lipsky*, 460 S.W.3d at 592 (noting that "[g]eneral damages are recoverable under a defamation claim for non-economic losses, such as loss of reputation and mental anguish").

To establish a defamation cause of action against a non-public figure, the plaintiff must prove that the defendant: (1) published a statement; (2) that was defamatory concerning the plaintiff; (3) with negligence regarding the truth of the statement. *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). Unless the defamatory statements are defamatory per se, the plaintiff must also plead and prove damages. *In re Lipsky*, 460 S.W.3d at 593. Examples of defamation per se include "[a]ccusing someone of a crime" and adversely remarking on an individual's "fitness to conduct his or her business." *Id.*

### 2. Oral Hearing Testimony

As noted, the trial court heard oral testimony from witnesses at the motion to dismiss hearing. In its brief, Infinity urges us to consider this evidence in determining whether a prima facie case has been made. Infinity argues that there is a split among the appellate courts as to whether live testimony may be considered in determining a TCPA

motion to dismiss. That was true with respect to the previous version of the statute, which stated that "[i]n determining whether a legal action should be dismissed under this chapter, the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." Act of May 21, 2011, 82nd Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961, 963 (amended 2019) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a)); *compare Batra v. Covenant Health Sys.*, 562 S.W.3d 696, 707 (Tex. App.—Amarillo 2018, pet. denied) ("In addition to consideration of the pleadings and affidavits, a trial court may, but is not required to, hear live testimony and receive the submission of documentary evidence.") *with Quintanilla v. West*, 534 S.W.3d 34, 42 (Tex. App.—San Antonio 2017) (noting that "[t]he trial court does not hear live testimony" in considering a TCPA motion to dismiss), *rev'd on other grounds*, 573 S.W.3d 237 (Tex. 2019). However, the TCPA has since been amended to state as follows:

> In determining whether a legal action is subject to or should be dismissed under this chapter, the court shall consider the pleadings, evidence a court could consider under Rule 166a, Texas Rules of Civil Procedure, and supporting and opposing affidavits stating the facts on which the liability or defense is based.

TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a). Rule 166a, applicable to summary judgment motions, allows evidence only in certain forms (such as affidavits, deposition transcripts, interrogatory answers, or other discovery responses), and specifically states that "[n]o oral testimony shall be received at the hearing." TEX. R. CIV. P. 166a. By amending the TCPA in this manner, the Legislature unmistakably intended to prohibit the taking or consideration of oral testimony in determining a motion to dismiss under the statute. We therefore do not consider any of the oral testimony taken at the July 29, 2021 hearing in our analysis.

14

### 3.    Analysis

In its response to appellants' motion to dismiss, Infinity produced only Garza's declaration, as set forth above, as well as two exhibits: (1) a screenshot of the text message sent by Moqbel to Garza; and (2) a screenshot of what appears to be a post on McCarthy's Facebook page.[11] In arguing that Infinity failed to produce clear and specific evidence of its claims, appellants contend that Garza's declaration is "conclusory" and "self-serving" and cannot meet that demanding standard. *See Elizondo v. Krist*, 415 S.W.3d 259, 264 (Tex. 2013) ("Conclusory statement[s] . . . [are] insufficient to create a question of fact to defeat summary judgment."); *City of San Antonio v. Pollock*, 284 S.W.3d 809, 816 (Tex. 2009) (holding conclusory, baseless testimony to be no evidence); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a) (stating that, in determining a TCPA motion to dismiss, the court shall consider "evidence a court could consider" in summary judgment proceedings); *In re Lipsky*, 460 S.W.3d at 592 ("Bare, baseless opinions do not create fact questions, and neither are they a sufficient substitute for the clear and specific evidence required to establish a prima facie case under the TCPA."). Appellants further argue that the factual allegations discussed in Infinity's response and Garza's declaration do not align with the allegations made in their live petition.

We agree with appellants that Infinity has failed to produce clear and specific evidence of any claim arising out of McCarthy's alleged solicitation of false Facebook reviews. Garza's declaration did not mention anything about McCarthy soliciting false Facebook reviews, and none of the other exhibits attached to Infinity's response supports

---

[11] The post stated: "This is the 'sales consultant' for Infinity Homes threatening me with legal actions for sharing public information from their page." It was accompanied by a screenshot of a private message sent to McCarthy, in which the author criticized McCarthy for "messaging former clients and new clients with your sob story" and told McCarthy to "stay off the Infinity page."

this claim. Accordingly, there is no evidence of any element of any cause of action arising out of this factual allegation.

On appeal, in its discussion regarding whether a prima facie case has been made, Infinity relies heavily on the allegations made in its amended petition, and the exhibits attached to that pleading. But pleadings do not constitute evidence, even if they are sworn or verified.[12] *Laidlaw Waste Sys. (Dall.), Inc. v. City of Wilner*, 904 S.W.2d 656, 660 (Tex. 1995); *see Regency Field Servs., LLC v. Swift Energy Operating, LLC*, 622 S.W.3d 807, 819 (Tex. 2021) ("Clearly, a party cannot rely on its own pleaded allegations as evidence of facts to support its summary-judgment motion or to oppose its opponent's summary-judgment motion."); *Yu v. Koo*, 633 S.W.3d 712, 729 (Tex. App.—El Paso 2021, no pet.) ("Neither the pleadings themselves, nor the allegations within them, constitute evidence."); *Buzbee v. Clear Channel Outdoor, LLC*, 616 S.W.3d 14, 27 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (recognizing that pleadings are not evidence "because assertions in a petition are nothing more than allegations").

Because Infinity produced no "clear and specific" evidence to support its claims regarding McCarthy's solicitation of false Facebook reviews, the TCPA motion to dismiss should have been granted with respect to this part of Infinity's suit. We sustain appellants' issue in part.

### III.   CONCLUSION

We reverse the trial court's judgment as it pertains to Infinity's claims regarding McCarthy's solicitation of Facebook reviews. We remand with instructions to dismiss those claims pursuant to the TCPA, to award court courts and attorney's fees to

---

[12] Infinity's pleadings were not sworn or verified.

16

appellants, and to consider whether to award sanctions to appellants. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a) ("Except as provided by Subsection (c), if the court orders dismissal of a legal action under this chapter, the court: (1) shall award to the moving party court costs and reasonable attorney's fees incurred in defending against the legal action; and (2) may award to the moving party sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter.").

As noted, after appellants' motion to dismiss was denied by operation of law and appellants perfected their appeal, the trial court signed an order formally denying the motion and finding that it was "frivolous or solely intended to delay." *See id.* § 27.009(b). Given our determination herein that the motion to dismiss should have been granted in part, we further conclude that the motion to dismiss was not frivolous or solely intended to delay. Accordingly, we reverse that portion of the judgment as well and remand for further proceedings consistent with this opinion.

The remainder of the trial court's judgment is affirmed.

DORI CONTRERAS
Chief Justice

Delivered and filed on the
9th day of June, 2022.

17