**Opinion issued July 29, 2025**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00513-CV

———————————

**DISCOVER BANK, Appellant**

**V.**

**MARCUS MILLER, Appellee**

---

**On Appeal from County Court at Law No. 3**
**Brazoria County, Texas**
**Trial Court Case CI64294**

---

## MEMORANDUM OPINION ON REHEARING

Appellant Discover Bank filed an amended motion for rehearing and an amended motion for en banc reconsideration of our August 29, 2024 opinion and judgment. We grant the amended motion for rehearing, withdraw our opinion and

judgment of August 29, 2024, and issue this opinion and judgment in their stead. We dismiss the amended motion for en banc reconsideration as moot.[1]

In this interlocutory appeal, Appellant Discover Bank challenges the trial court's order denying its motion to compel arbitration of the counterclaim of Appellee Marcus Miller for violations of the federal Truth in Lending Act. In its sole issue, Discover contends that the trial court erred by denying its motion to compel arbitration.

We reverse the trial court's order and we remand the matter to the trial court for entry of an order compelling arbitration.

## The Underlying Lawsuit

In 2018, Marcus Miller applied for and received a personal loan from Discover Bank in the amount of $35,000. After Miller defaulted on his obligations to repay the loan, Discover closed his account due to nonpayment. In 2022, Discover sued Miller for breach of contract seeking to recover $29,903.97, representing the remaining balance due on the account.

---

[1] Because we issue a new opinion, the amended motion for en banc reconsideration is moot. *See Brookshire Bros., Inc. v. Smith*, 176 S.W.3d 30, 40 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (noting that motion for en banc reconsideration rendered moot when motion for rehearing granted and new opinion and judgment issue); *Sohani v. Sunesara*, No. 01-20-00114-CV, 2023 WL 1112165, at *1, n.1 (Tex. App.—Houston [1st Dist.] Jan. 31, 2023, pet. denied) (mem. op.) (same).

Miller filed a general denial, but later asserted a counterclaim against Discover for the bank's alleged failure to display the loan's "Annual Percentage Rate" and "Finance Charge" more conspicuously on its loan disclosures as required by the Truth in Lending Act ("TILA") and Regulation Z. *See* 15 U.S.C. § 1632(a); 12 C.F.R. § 1026.17(a)(2). Miller asserted the counterclaim on his own behalf and on behalf of a putative class of Discover customers. Miller later amended his counterclaim to assert an individual claim for violation of Regulation Z claiming Discover had understated the annual percentage rate of the loan in its loan disclosures.

Discover responded by filing a Motion to Compel Arbitration arguing that Miller's account was governed by a written, valid arbitration agreement, which required arbitration of disputes with Discover and prohibited Miller from pursuing class claims. Discover requested that Miller's individual counterclaim against Discover be compelled to arbitration, and that his purported class claims be dismissed.

Discover attached to its Motion to Compel Arbitration the declaration of Dan Matysik, its Vice President for Personal Loans. Attached to Matysik's declaration was a copy of Miller's purported Loan Agreement. Matysik stated he had "personally reviewed the account history and record relating to the personal loan account" for Miller. He stated that according to Discover's record, Miller applied

3

for a personal loan with Discover on March 24, 2018. Discover approved Miller for a $35,000 loan "[o]n or about March 27, 2018" and "Discover then sent Miller a copy of his Loan Agreement." Matysik explained that consistent with Discover's standard practice, "when Miller's application was approved, the loan proceeds were disbursed to him and the applicable Loan Agreement was mailed to him, postage prepaid, at the address Miller provided on his application." Matysik stated that in connection with the loan, "Miller [had] agreed to abide by the terms and conditions applicable to the Loan, which were contained in [the] Loan Agreement" attached at Exhibit 1 to his declaration.

> The Loan Agreement attached to Matysik's declaration provided that Miller
>
> agree[d] to [its] terms . . . and promise[d] to pay to [Discover] the Principal Amount Advanced (the Amount Financed), with interest at the Interest Rate disclosed with the Truth in Lending Disclosure Statement. Interest w[ould] begin to accrue on the entire Principal Amount Advanced from the date of the first disbursement and w[ould] continue to accrue on the unpaid balance of the principal amount until [Miller] . . . repaid all of the Principal Amount Advanced.

The Loan Agreement included terms for minimum payments, late fees, prepayment, default, and acceleration. Relevant to the issue here, the Loan Agreement included an arbitration provision, which stated:

> **Agreement to arbitrate**. In the event of a dispute between you and us arising under or relating to this Account, either may choose to resolve the dispute by binding arbitration, as described below, instead of in court. Any claim (except for a claim challenging the validity or enforceability of this arbitration agreement, including the Class Action Waiver) may be resolved by binding arbitration if either side requests

4

it. THIS MEANS IF EITHER YOU OR WE CHOOSE ARBITRATION, NEITHER PARTY SHALL HAVE THE RIGHT TO LITIGATE SUCH CLAIM IN COURT OR TO HAVE A JURY TRIAL. ALSO DISCOVERY AND APPEAL RIGHTS ARE LIMITED IN ARBITRATION.

. . . .

CLASS ACTION WAIVER. ARBITRATION MUST BE ON AN INDIVIDUAL BASIS. THIS MEANS NEITHER YOU NOR WE MAY CONSOLIDATE CLAIMS IN ARBITRATION BY OR AGAINST OTHER ACCOUNTHOLDERS, OR LITIGATE IN COURT OR ARBITRATE ANY CLAIMS AS A REPRESENTATIVE OR MEMBER OF A CLASS OR IN A PRIVATE ATTORNEY GENERAL CAPACITY. Only a court, and not an arbitrator, shall determine the validity and effect of the Class Action Waiver. Even if all parties have opted to litigate a claim in court, you or we may elect arbitration with respect to any claim made by a new party or any new claims later asserted in that lawsuit.

The arbitration provision also provided it was governed by the Federal Arbitration

Act. In conspicuous print, it notified Miller that:

**You Have the Right to Reject Arbitration for this Account. You may reject the arbitration agreement but only if we receive from you a written notice of rejection within 30 days of your receipt of this Agreement**. . . . Your rejection notice must include your name, address, phone number, Account number and personal signature. No one else may sign the rejection notice for you. Your rejection notice also must not be sent with any other correspondence. Rejection of arbitration will not affect your other rights or responsibilities under this

Agreement. If you reject arbitration, neither you nor we will be subject to the arbitration provisions for this Account.

(Emphasis in original).[2] Discover argued Miller had not opted out of the arbitration agreement.

Miller filed a response to Discover's Motion to Compel Arbitration. In his response, Miller did not dispute the existence of the arbitration agreement, nor did he contest receiving or agreeing to the terms of the Loan Agreement, including the arbitration clause. Indeed, he conceded that "Discover sent Miller initial disclosures" and that in "these disclosures, Discover provided the terms of the loan[.]" Miller's primary argument was waiver. He argued that the Motion to Compel should be denied because Discover had "substantially invoke[d]" the judicial process to Miller's detriment or had taken "action inconsistent with the right to arbitration." Miller argued that Discover had shown "no signs of wanting to arbitrate" and that "Discover routinely use[d] the courts to collect debts from its

---

[2]    The Loan Agreement also included a "30-Day Guarantee" stating:

> If you return the loan proceeds (all amounts advanced to you or on your behalf) within 30 days of the date of disbursement of your loan, we will not charge you any interest or origination fees (if applicable) and your loan will be canceled. You must submit your request to cancel to us in writing, along with a single check for the amount of the loan proceeds . . . . We must receive this request to cancel and the loan proceeds within 30 days of the date of disbursement of your loan disbursement of the loan proceeds.

customers."[3] Miller also argued that the arbitration agreement was illusory because Discover "consistently chooses to ignore this [arbitration] clause in their contracts until it is favorable for them to do so." No evidence was attached to Miller's response.

Discover replied arguing it had not waived arbitration because it had not substantially invoked the judicial process and Miller had not established prejudice. It noted that aside from initiating the lawsuit against Miller, Discover had taken no other action in the trial court to invoke the judicial process.[4] Discover further argued that the arbitration clause was not illusory because Miller and Discover each had a contractual right to pursue arbitration under the Loan Agreement. Thus, it argued, the arbitration agreement "equally binds Miller and Discover as either may elect to pursue arbitration and both parties are bound by that decision."

Discover's Motion to Compel was set for hearing on April 28, 2023. The day before the hearing, Miller field a sur-reply arguing for the first time that Discover

---

[3] In his appellate brief, Miller argues that Discover filed its Motion to Compel Arbitration seventy-seven days after Miller filed his original counterclaims and sixty-four days after Miller filed his first amended counterclaims. Timing alone, however, is insufficient to establish waiver. *See Richmont Holdings, Inc. v. Superior Recharge Sys., L.L.C.*, 455 S.W.3d 573, 576 (Tex. 2014) ("[M]ere delay in moving to compel arbitration is not enough for waiver."). And Miller does not identify any of Discover's pleadings or trial conduct to support its argument that Discover substantially invoked the judicial process.

[4] When it filed its Motion to Compel Arbitration, Discover had not served any discovery, nor had it responded to Miller's discovery requests.

had "produced no evidence that Miller [had] signed the arbitration agreement." Miller did not dispute receiving the Loan Agreement. Rather, Miller argued he applied for the loan on March 24, 2018, and that three days later, on March 27, 2018, "Discover approved [his] loan application, the funds were disbursed" and "*then* Discover sent [him] a copy of the loan agreement." (Emphasis in original.) Miller did not expressly deny signing the Loan Agreement nor did he submit any evidence in support of his arguments. He merely argued there was no evidence he was "aware of, signed, or consented to the terms of the arbitration agreement before the monies were disbursed to him."

The trial court denied Discover's Motion to Compel Arbitration, but four days later, the court granted Discover's Motion for Reconsideration resetting the hearing on the Motion to Compel for June 5, 2023.[5] After the trial court granted the Motion for Reconsideration, but prior to the second hearing, Discover filed a combined Motion to Strike Miller's Sur-reply and Response in Opposition to Miller's Sur-reply.

Discover moved to strike Miller's sur-reply because (1) Miller had not sought or been granted leave to file the sur-reply, and (2) in it, Miller raised new arguments

---

[5] Discover argues in its appellate brief that the trial court denied its Motion to Compel because its counsel was "2 minutes late to the hearing," and that "[u]pon Discover's motion for rehearing, the Court reset the oral hearing for June 5, 2023."

not previously raised.[6]  Alternatively, in response to the sur-reply, Discover argued

Miller's arguments lacked merit because Miller had not submitted an affidavit

verifying his claim that he had not signed or agreed to the terms of the loan.  Discover

argued it had presented Miller with the terms of the Loan Agreement both before

and after approval of his loan application.  Before approval of the loan, Discover

argued Miller accepted the terms of the Loan Agreement *twice*: first when he

reviewed the terms of the Loan Agreement, including the arbitration agreement,

online and consented to the terms electronically by clicking "Continue" and

submitting his loan application to Discover for consideration, and a second time by

completing the loan process over the phone with Discover at which time Miller

verified his identity and again "confirmed the terms of the loan" and "verbally agreed

to them."  After the loan was approved, Discover argued Miller was again presented

with the terms of the Loan Agreement.  Discover argued that Miller admitted he had

---

[6]     Miller later filed a motion for retroactive leave to file his sur-reply.  The clerk's
record does not include a ruling on the Motion to Strike Miller's sur-reply or
Miller's motion for retroactive leave.  But the second order denying Miller's Motion
to Compel Arbitration from which Discover appeals states the trial court considered
"the Motion, any responses, other briefing and pleadings, and all matters of record."
The trial court thus implicitly denied Discover's Motion to Strike and considered
the sur-reply. *See generally Iacono v. Stanley Black & Decker, Inc.*, No. 01-15-
00427-CV, 2016 WL 2745401, at *3 n.7 (Tex. App.—Houston [1st Dist.] May 10,
2016, no pet.) (mem. op.) (although trial court did not expressly rule on objection
to untimely petition filed without leave of court, because order stated it considered
"all matters of record," appellate court presumed trial court granted leave to file late
pleading).

"applied for and received the funds for a personal loan with Discover along with the terms and conditions for the loan."

In support of its response, Discover attached the unsworn declaration of Satish Bhatt, a Discover employee "familiar with the processes through which borrowers apply for and enter the agreements that govern the borrowers' personal loan accounts." Bhatt's title at Discover was Director, DPL Acquisition Operations. Bhatt explained he "had personally reviewed the account history and records relating to the personal loan account of Marcus Miller." Bhatt stated that according to Discover's records, "on March 24, 2018, Miller applied online for a personal loan with Discover," and

> [b]efore Miller submitted his application, Discover presented Miller with an e-signature agreement. In order to proceed to the next step, Miller had to click "Continue." Discover's records reflect that Miller accepted the terms of the e-signature agreement by clicking "Continue."
>
> After Miller accepted the e-signature agreement, Discover provided Miller with the terms and conditions of the loan, including the arbitration agreement. In order to proceed with the loan application process, Miller had to select "Continue." Discover's records reflect that Miller accepted these terms by clicking "Continue." Once Miller had accepted the terms and conditions, including the arbitration agreement, Miller could submit his application to Discover for consideration.
>
> Miller also completed the loan process over the phone, and the call was recorded.

Bhatt stated he reviewed the recording, which reflects that during the call:

10

Miller verified his identity by, among other things, providing his name, date of birth, and Social Security Number. The agent provided the amount of the loan, the interest rate, and the length of the loan term requested as part of the loan acceptance disclosures, and Miller verbally agreed to them.

Miller filed a response arguing that Discover had waited too long to compel arbitration and it was thus not entitled to the relief requested. Miller argued that Bhatt's declaration should be stricken because Discover "had ample time to produce evidence" supporting its claims for arbitration.[7] Miller did not respond to Discover's arguments that Miller had several times been provided with the Loan Agreement and had agreed to its terms. Nor did Miller provide any evidence in support of his arguments or to controvert Bhatt's and Matysik's declarations.

During the second hearing on Discover's Motion to Compel, Miller appeared to concede he may have signed the arbitration agreement, yet he continued to argue he did not agree to arbitrate:

So the other side said that we are contesting that we did not sign [the arbitration agreement]. We're not saying we didn't sign it. We're saying they can't prove that Mr. Miller signed it or agreed to it, and that

---

[7] The clerk's record does not include a ruling on Miller's objections to Discover's evidence or motion to strike. The second order denying Miller's Motion to Compel Arbitration from which Discover appeals states the trial court considered "the Motion, any responses, other briefing and pleadings, and all matters of record." The trial court thus implicitly denied Miller's objections and motion to strike, and considered Discover's evidence. *See generally Fortitude Energy, LLC v. Sooner Pipe LLC*, 564 S.W.3d 167, 179 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (concluding when summary judgment order stated court considered all pleadings, all evidence, arguments of counsel, record, and applicable law, objections to summary judgment evidence were implicitly overruled).

11

goes to contract formation in the [S]tate of Texas. Contract formation is, Your Honor, is where –requires a meeting of the minds. The parties have to assent to the terms, and they can't show that Mr. Miller did agree to arbitration.

Despite Discover's uncontroverted evidence that Miller was presented with the Loan Agreement, including the arbitration agreement, and agreed to its terms three times (1) first when he submitted his loan application electronically, (2) a second time over the phone during the loan application process, and (3) last when his loan was approved, the trial court denied Discover's Motion to Compel Arbitration.

In its sole issue, Discover contends the trial court erred in denying its Motion to Compel Arbitration because there was a binding arbitration agreement requiring that Miller's claims be resolved by arbitration.

**Applicable Legal Standard**

A party seeking to compel arbitration must establish the existence of a valid arbitration agreement and that the claims in dispute fall within the scope of the agreement. *Venture Cotton Coop. v. Freeman*, 435 S.W.3d 222, 227 (Tex. 2014); *In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011) (orig. proceeding). If the party seeking arbitration carries its initial burden, the burden shifts to the non-movant to present evidence of its defenses to the arbitration agreement. *Williams Indus., Inc. v. Earth Dev. Sys. Corp.*, 110 S.W.3d 131, 134–35 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (citing *Mohamed v. Auto Nation USA Corp.*, 89 S.W.3d 830, 835 (Tex.

12

App.—Houston [1st Dist.] 2002, no writ) (citing *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999)).

## Valid Arbitration Agreement

For an arbitration agreement to be valid, the parties must have consented to the agreement. *Aerotek, Inc. v. Boyd*, 624 S.W.3d 199, 204 (Tex. 2021); *see also TotalEnergies E&P USA, Inc. v. MP Gulf of Mexico, LLC*, 667 S.W.3d 694, 701 (Tex. 2023) (explaining that because arbitration is matter of contract, "parties cannot be compelled to arbitrate any controversy unless they have contractually agreed to do so") (citing *Robinson v. Home Owners Mgmt. Enters., Inc.*, 590 S.W.3d 518, 521 (Tex. 2019)).

Miller argues Discovery's proof created issues of material fact regarding the existence of a valid arbitration agreement. We disagree. The only evidence before the trial court established that Discover offered the loan to Miller under definite terms and conditions multiple times, and that Miller accepted the offer first when he applied for the loan and later when he accepted and used the loan proceeds. There was no evidence that Miller accepted the loan proceeds before he received the Loan Agreement, nor did Miller submit any evidence disclaiming his acceptance of the Loan Agreement or disputing his electronic signature when he applied for the loan. Discover's evidence was thus uncontroverted and established the existence of a valid arbitration agreement.

The Texas Supreme Court's opinion in *Aerotek, Inc. v. Boyd* is instructive. 624 S.W.3d 199 (Tex. 2021). In that case, four employees were terminated from Aerotek soon after they were hired. They sued Aerotek and others for racial discrimination and retaliation. Aerotek moved to compel arbitration, arguing the employees were required to arbitrate their claims pursuant to the arbitration agreement they had each signed electronically when submitting their employment applications.[8] *Id.* at 202. The employees argued in sworn declarations attached to their responses to the motion to compel that although they had completed the online hiring application, they had not "seen, signed or been presented" with the arbitration agreement. *Id.* During an evidentiary hearing on the motion to compel, Aerotek presented testimony from a program manager who "helped design and develop the [electronic Aerotek employment] application[.]" *Id.* The program manager testified there was no way the employees could have completed their job applications without executing the arbitration agreement. *Id.* at 203. She testified that job applicants "have to complete everything in that section before they can get to the finalize-and-submit section. So everything has to be signed and completed before they get there." *Id.*

---

[8]     Aerotek exclusively used a computerized hiring application to guide employment candidates through the hiring process. *Aerotek, Inc. v. Boyd*, 624 S.W.3d 199, 201 (Tex. 2021).

The trial court denied the motion to compel arbitration and a divided panel of the court of appeals affirmed. *Id.* In affirming, the appellate court concluded that Aerotek's program manager had "insufficient capacity to establish the system was failsafe" because she was "not an IT expert." *Id.* The dissent argued the majority was setting "a standard that would make electronic contract formation practically impossible" and would invalidate the Uniform Electronic Transaction Act, which determines whether an electronic signature is binding.[9] *Id.* at 204.

The Texas Supreme Court reversed the court of appeals, explaining that "[a]side from their denials, [the employees had] offered no evidence to support their allegation that they [had] not electronically sign[ed] the [arbitration agreements] that Aerotek introduced into evidence." *Id.* at 206. The employees conceded they had "completed Aerotek's computerized hiring application and electronically signed the documents included—save for one, [the arbitration agreement]." *Id.* The court held that Aerotek's evidence establishing the procedures "its hiring application used to verify that a candidate electronically signed" the arbitration agreement was uncontroverted and established that employment applicants must necessarily sign

---

9   The focus of the Uniform Electronic Transaction Act "is on the efficacy of the security procedures inherent in the electronic transaction itself." *Houston ANUSA, LLC v. Shattenkirk*, 693 S.W.3d 513, 518 (Tex. App.—Houston [14th Dist.] 2023, no pet.) (citing TEX. BUS. & COM. CODE § 322.009(a)). A party who seeks to enforce a contract signed electronically must proffer evidence "to establish the efficacy of the security procedures" used in the transactions. *Id.* (citing *Aerotek, Inc.*, 624 S.W.3d at 204).

15

the arbitration agreement before completing their job applications. *Id.* "The applications' business rules made it so that the application could not be submitted until all steps were completed and all required signatures provided, including on the [arbitration agreement]." *Id.* The majority disagreed with the dissent's "suggestion that merely denying an electronic signature qualifies as some evidence in showing an electronically signed arbitration agreement's invalidity," stating that "[o]nce Aerotek proved its security procedures, the burden shifted to the Employees to demonstrate how their electronic signatures could have wound up on the [arbitration agreements] without their having placed them there themselves. Mere denials do not suffice." *Id.* at 208–09. The court concluded that "reasonable people could not differ in concluding that the Employees could not have completed their hiring applications without signing the [arbitration agreements]. The Employees' simple denials are no evidence otherwise." *Id.* at 209.

The holding in *Aerotek* applies with stronger force here. The only evidence before the trial court established that Miller completed a loan application with Discover online that required him to evince his acquiescence to the terms of the Loan Agreement, including the arbitration provision. By hitting "Continue" after being presented with the terms of the Loan Agreement, Miller agreed to the terms of the loan and submitted his loan application. As Bhatt stated in his declaration, Miller simply could not have completed the loan application or obtained the loan without

16

agreeing to the terms of the Loan Agreement, including the arbitration agreement. Miller did not dispute that he agreed to use an electronic signature to submit his loan application online or that he clicked "Continue" when presented with the terms of the Loan Agreement online.

Not only did Miller accept the terms of the Loan Agreement by hitting "Continue" when he was first presented with the terms online, he again agreed to the terms over the phone during the loan application process. As Bhatt explained, after Miller submitted his loan application, he completed the loan application process over the phone. As part of that process, Discover verified Miller's identity and again confirmed he agreed to the terms and conditions of the loan. Miller apparently argues that evidence of his online and telephone contacts with Discover during the application process is not relevant to the issue of whether he created an enforceable agreement to arbitrate with Discover.

As the Supreme Court held in *Aerotek*, Aerotek conclusively established that the employees had "signed, and therefore consented to, the [arbitration agreement]" when they first submitted their job applications online. *Id*. at 210. Notably, the employees in that case were presented with and signed the arbitration agreement electronically when they first applied for their jobs before being hired by Aerotek. *Id*. at 201–02. The same is true here. Discover conclusively established that Miller electronically signed and thus consented to the terms of the Loan Agreement,

17

including the arbitration agreement, when he first submitted his loan application, which he would not have been able to submit without such consent. Miller submitted no evidence rejecting his electronic signature or his consent to the terms of the loan. Indeed, he submitted no evidence at all, relying instead on the argument of his counsel. "Because arguments are not evidence," no evidence supports Miller's argument that no valid arbitration exists." *See id.* at 208.

Miller relies on *Aerotek* to argue that Bhatt's affidavit is not sufficient evidence of his electronic signature.[10] He argues that neither Bhatt's declaration nor the "sample" mailer provided by Discover established that "Discover made a valid offer to Miller" because the "sample" did not provide "clear and definite" terms to an agreement. The "sample" to which Miller refers is the loan solicitation Discover sent to Miller "sometime prior to March 24, 2019." As Bhatt explained, "as part of the solicitation, Miller would have received a copy of the terms and conditions for a loan with Discover, as well as a code to use when applying online." Miller is correct that the solicitation was nothing more than an invitation for him to apply for a Discover loan at a future date. But that is inconsequential.

---

[10] *Aerotek* is distinguishable in that there, the employees argued and submitted declarations stating they had not signed the arbitration agreement, whereas Miller did not submit any evidence, and conceded during the hearing that he was "not saying [he] didn't sign it," he was merely arguing there was no meeting of the minds with respect to arbitration.

Setting aside the solicitation, the key here is that later, on March 24, 2019, Miller applied for a Discover loan online and in doing so, he electronically consented to the terms of the Loan Agreement, which Miller does not dispute are the same terms he received again on March 27, 2019, when the loan was approved. Indeed, the terms of the Loan Agreement, which include the arbitration provision, form the basis of the counterclaims Miller asserts against Discover. That is, while Miller claims he never agreed to the terms of the Loan Agreement, he nonetheless asserts individual and class claims against Discover based on the Loan Agreement for the bank's alleged failure to display the loan's "Annual Percentage Rate" and "Finance Charge" more conspicuously on its loan disclosures, as required by TILA and Regulation Z. Indeed, in his latest amended pleading, Miller copied and pasted a portion of the Loan Agreement Discover mailed to him on March 27, 2018, stating:

12. In Miller's case the disclosures show the APR and Finance Charge in the same typeface as the other information concerning the loan:

**DISCOVER**

PERSONAL LOANS
LOAN#:500005001373
March 27, 2018

**TRUTH-IN-LENDING DISCLOSURES**

Creditor: Discover Bank - Wilmington, DE 19850

| Annual Percentage Rate | Finance Charge | Amount Financed | Total of Payments |
|---|---|---|---|
| The cost of your credit as a yearly rate: | The dollar amount the credit will cost you: | The amount of credit provided to you or on your behalf: | The amount you will have paid after you have made all payments as scheduled: |

Miller thus does not dispute receiving the Loan Agreement. Rather, Miller argues he applied for the loan on March 24, 2018, and that three days later, on March 27, 2018, "Discover approved [his] loan application, the funds were disbursed" and "*then* Discover sent [him] a copy of the loan agreement." But Miller does not argue, nor did he submit a declaration stating that, he accepted the disbursed loan proceeds *before* he received the Loan Agreement in the mail. Nor did he submit a declaration stating he did not agree to the arbitration clause or denying he electronically signed the during the online application process. Miller's focus was on the purported lack of evidence provided by Discover reflecting his agreement to the arbitration agreement. In other words, he focused on the sufficiency of Discover's evidence.

As in *Aerotek*, Discover provided evidence that its loan application process would have prevented Miller from completing his loan application without his first reviewing and electronically agreeing to the Loan Agreement, including the arbitration agreement. *See id.* at 209–10 (holding employees had "signed, and therefore consented to, the [arbitration agreement]" when they first submitted their job applications online and "reasonable people could not differ in concluding that the Employees could not have completed their hiring applications without signing the [arbitration agreements]"). Bhatt testified that Miller had to e-sign a Loan Agreement that included the arbitration provision before he could complete his loan application and that Miller agreed to the terms and provisions of the agreement on

the phone before completing the loan application and receiving the loan. As in *Aerotek*, Discover's evidence establishing its loan procedures and the security measures it implemented[11] to verify a loan applicant received and agreed with the Loan Agreement was "uncontroverted." *See id.* at 206. "The application's business rules made it so that the application could not be submitted until all steps were completed and all required signatures provided, including on the [arbitration agreement]." *Id.* Contrary to Miller's assertion, *Aerotek* does not require proof beyond that provided by Discover.

## Acceptance by Conduct

Miller's argument that there was no acceptance of the arbitration agreement violates a well-settled tenet of contract law.[12] "Under Texas law, if one party signs a contract, the other may accept by her acts, conduct, or acquiescence to the terms

---

[11] For example, Discover's application required Miller to provide his name, date of birth, social security number, address, and phone number. *See Aerotek*, 624 S.W.3d at 205 (noting that, among others, "security procedures [in an electronic contract] may include requiring personal identifying information—such as a social security number or an address—to register for an account"). In addition, security measures may also include the electronic contract's "requir[ing] users to complete all steps in a program before moving on or completing it[.]" *Id.* at 206.

[12] Miller argues on appeal that the solicitation for the loan was not an offer, but rather an invitation to enter into negotiations. He did not make that argument in the trial court. As such, we cannot consider that argument. TEX. R. APP. P. 33.1(a). In any event, the argument is inconsequential because notwithstanding the solicitation, Miller was provided with the Loan Agreement at least twice during the loan application process and again after the loan was approved. Miller was given the option to opt out of the arbitration agreement, which option he never took.

21

of the contract, making it a binding agreement on both parties." *Jones v. Citibank (S.D.), N.A.*, 235 S.W.3d 333, 338 (Tex. App.—Fort Worth 2007, no pet.) (citing *MG Bldg. Materials, Ltd. v. Moses Lopez Custom Homes, Inc.*, 179 S.W.3d 51, 61–62 (Tex. App.—San Antonio 2005, pet. denied)).

In addition to his acceptance of the loan terms during the loan application process, Miller's receipt and acceptance of the disbursed funds constituted an acceptance of the Loan Agreement and all its terms. Miller does not dispute that he received, accepted, and used the disbursed loan proceeds. And he offered no evidence that he accepted the funds before receiving or knowing about the Loan Agreement. The evidence thus established an offer and acceptance. *See Mock v. Nat'l Collegiate Student Loan Tr. 2007-4*, No. 01-17-00216-CV, 2018 WL 3352913, at *6 (Tex. App.—Houston [1st Dist.] July 10, 2018, no pet.) (mem. op.) ("[T]he evidence shows that the Mocks applied for a loan from Union, Union offered them a loan on the terms set forth in the Credit Agreement and Disclosure Statement, and the Mocks accepted the offer by depositing the check."); *Savoy v. Nat'l Collegiate Student Loan Tr. 2005-3*, 557 S.W.3d 825, 836 (Tex. App.—Houston [1st Dist.] 2018, no pet.) ("[T]he evidence shows that the Savoys applied for a loan from JPMorgan Chase, JPMorgan Chase offered the Savoys a loan on the terms set forth in the Credit Agreement and Disclosure Statement, and the Savoys accepted the offer by allowing the loan proceeds to be used . . . without objection."); *see also Jones*,

22

235 S.W.3d at 338–39 ("[A]ppellant does not dispute that she used her Citibank credit card to purchase goods for over six years. Thus, even if appellant never signed the card agreement, under Texas law, she entered into a contract with appellee by accepting the benefits of their arrangement."); *Winchek v. Am. Exp. Travel Related Servs. Co., Inc.*, 232 S.W.3d 197, 204 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (holding appellant's use of credit card and making of payments on account for purchases and charges reflected on monthly billing statements "manifested her intent that the contract become effective"); *Patrick v. Am. Express Nat'l Bank*, No. 01-22-00795-CV, 2024 WL 969729, at *3 (Tex. App.—Houston [1st Dist.] Mar. 7, 2024, no pet.) (mem. op.) ("In a credit-card case, these elements [establishing the existence of a valid contract] are satisfied when there is an issuance of a credit card by one party and the use of the card by the other party.").

## Miller's Defenses

Miller argues on appeal that the arbitration provision was not binding because it was illusory, and that Discover failed to satisfy its burden to show Miller signed the arbitration agreement. With respect to the illusory argument, Miller argues that because Discover "regularly uses the courts to pursue customers who had defaulted on their loans," the arbitration agreement "may not be illusory in form, but it is illusory in practice." Miller does not cite any cases in support of his argument. He

23

further complains that Discover's attempt to compel Miller's counterclaims to arbitration, but not its own claim, renders the arbitration agreement illusory.

"[A]n arbitration clause is not illusory unless one party can avoid its promise to arbitrate by amending the provision or terminating it altogether." *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010) (orig. proceeding) (citing *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 424 (Tex. 2010) (orig. proceeding); *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 505 (Tex. 2015) (orig. proceeding) ("An arbitration agreement is illusory if it binds one party to arbitrate, while allowing the other to choose whether to arbitrate."). Further, the fact that "the scope of an arbitration provision binds parties to arbitrate only certain disagreements does not make it illusory." *Id.* Here, the arbitration provision provides that either Miller or Discover can "choose to resolve the[ir] dispute by binding arbitration . . . instead of in court." The arbitration provision is mutual, and neither side can avoid arbitration by amending or terminating the arbitration clause. The arbitration provision is thus not illusory.

As for Miller's second defensive argument, Discover established that Miller electronically signed and verbally consented to the arbitration agreement to be approved for the loan.[13] Bhatt's uncontroverted declaration explained that the loan

---

[13]     "The party opposing the enforcement of an electronic agreement may come forward with evidence that the security procedures utilized in the transaction 'lack[ed] integrity or effectiveness,' and that therefore, the party's signature on the contract

24

application could not have been completed unless Miller acquiesced to the terms of the Loan Agreement, including the arbitration agreement. Miller argues the declarations of Matysik and Bhatt are conclusory because both "assert legal conclusions without providing admissible factual evidence and neither declaration attaches sworn or certified copies of the referenced documents to the declarations."

Although Miller objected in the trial court to Matysik's declaration, he did not obtain a ruling on the objections. He thus waived any objections as to form. *See McMahan v. Greenwood*, 108 S.W.3d 467, 498 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (holding objections to form in summary judgment affidavits were waived because appellees failed to obtain written rulings on objections); *Hicks v. Group & Pension Adm'rs., Inc.*, 473 S.W.3d 518, 535 (Tex. App.—Corpus Christi–Edinburg 2015, no pet.) ("A defect in the form of a declaration must be objected to in the trial court and failure to obtain a ruling from the trial court on an objection to the form of a declaration waives the objection.") (citing *Stone v. Midland Multifamily Equity REIT*, 334 S.W.3d 371, 374 (Tex. App.—Dallas 2011, no pet.)). The challenge to Bhatt's declaration, which is largely predicated on the failure to attach records, was not raised below. The failure to attach sworn or certified documents to a declaration is a defect in form that may not be raised for the first time

cannot reliably be attributed to him." *Solcius, LLC v. Meraz*, No. 08-22-00146-CV, 2023 WL 2261414, at *5 (Tex. App.—El Paso Feb. 27, 2023, no pet.) (mem. op.) (citing *Aerotek*, 624 S.W.3d at 210). Miller did not proffer any such evidence.

on appeal.  *See Mathis v. Bocell*, 982 S.W.2d 52, 60 (Tex. App.—Houston [1st Dist.] 1998, no pet.) ("[W]e conclude that the failure of Westerband to attach the medical records on which he relied is a defect of form."); *Morales v. JP Morgan Chase Bank, N.A.*, No. 01-10-00553-CV, 2011 WL 2624047, at *4 (Tex. App.—Houston [1st Dist.] June 30, 2011, no pet.) (mem. op.) (following *Mathis*); *Jones v. WKB Value Partners, L.P.*, No. 04-07-00865-CV, 2008 WL 2261192, at *2 (Tex. App.—San Antonio June 4, 2008, no pet.) (mem. op.) (noting split of authority but holding party's failure to attach documents referenced in affidavit is defect in form).  Miller also argues that Bhatt's declaration is conclusory, but that argument is premised on Bhatt's failure to attach records to his declaration.

Miller raised other defenses on appeal that were not raised in the trial court. For example, he argues for the first time in his brief that the documents attached to Bhatt's declaration violate the best evidence rule,[14] that "no agreement existed at the end of the application process," and that the arbitration provision is not conspicuous. Because Miller did not make these arguments in the trial court, they are waived. TEX. R. APP. P. 33.1(a); *see also Allen v. St. Paul Fire & Marine Ins. Co.*, 960

---

[14]   *See* TEX. R. EVID. 1002 ("An original writing, recording, or photograph is required in order to prove its content unless these rules or other law provides otherwise."); TEX. R. EVID. 1003 ("A duplicate is admissible to the same extent as the original unless a question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate."); TEX. R. EVID. 1004 (explaining when original is not required and "other evidence of the content of a writing, recording or photograph is admissible").

S.W.2d 909, 913 (Tex. App.—Texarkana 1998, no pet.) (holding best evidence rule objection waived if not argued in trial court); *Vera v. N. Star Dodge Sales, Inc.*, 989 S.W.2d 13, 16 (Tex. App.—San Antonio 1998, no pet.) (holding conspicuousness argument waived because not argued in trial court).

Miller also argues that the evidence offered by Discover consists of "blank sample pages neither connected to nor related to its loan agreement or the arbitration agreement between it and Miller." The sample pages to which Miller refers are attached to Bhatt's declaration at Exhibit 2. In his declaration, Bhatt explained that Exhibit 2 is a "screenshot[] of a sample of the online loan application process in place in 2018." The screenshots depict what Bhatt avers in his affidavit: (1) that when Miller submitted his application, "Discover presented Miller with a e-signature agreement," (2) that to proceed, Miller "had to click 'Continue'", (3) that after "Miller accepted the e-signature agreement, Discover provided Miller with the terms of the conditions of the loan, including the arbitration agreement," and (4) that to proceed, Miller had to select "Continue." Had Discover merely submitted these sample pages without more, Miller's argument would carry more weight. But in addition to submitting the screenshots and explaining how they illustrate Discover's general loan application process as it existed in 2018, Bhatt also reviewed Discover's records and he averred that the "records reflect[ed] that Miller accepted the terms of the e-signature agreement by clicking 'Continue'" and that he "accepted the[] terms

[and conditions including the arbitration agreement] by clicking 'Continue.'" This uncontroverted evidence satisfied Discover's burden to establish the existence of a valid arbitration agreement. *See Aerotek*, 624 S.W.3d at 206–09 (rejecting non-movant's argument that because in-court demonstration of hiring application process "showed only how [the process] had worked that day, not how it worked" when non-movants used it, evidence was insufficient to establish valid arbitration agreement, and holding that employer's "uncontroverted" evidence showing security procedures used for its hiring application and to verify that candidate electronically signed his arbitration agreement met employer's burden to establish valid arbitration agreement).

## Scope of the Arbitration Agreement

Having established there was an arbitration agreement, Discover must establish that Miller's counterclaims fall within the scope of the agreement. Discover satisfied its burden and Miller does not challenge the scope of the arbitration agreement or argue on appeal that his claims do not fall within the purview of the arbitration provision.

## Conclusion

Because Discover provided uncontroverted evidence that Miller received and consented to the arbitration agreement both before and after the loan was approved,

28

the trial court erred in denying Discover's Motion to Compel Arbitration. We sustain Discover's sole point.

We reverse the trial court's order and we remand the matter to the trial court for entry of an order compelling arbitration.

Veronica Rivas-Molloy
Justice

Panel consists of Justices Rivas-Molloy, Guiney, and Morgan.[15]

---

[15] The Honorable Peter Kelly and Julie Countiss, former Justices of this Court, were members of the Panel when the case was submitted and participated in the original decision of this case. Their terms of office expired on December 31, 2024, and they did not participate in the decision on this motion. *See* TEX. R. APP. P. 49.3.